NEW-YORK,
Oct 1815.

SUMNER
V.
BUEL.

SUMNER *against* BUEL.

THIS was an action for a libel published in a newspaper, called the *Albany Argus*, on the 19th of *August*, 1814. The defendant suffered judgment by default, and the plaintiff's damages were assessed at six cents. The defendant now moved in arrest of judgment.

*An action does not lie by an officer of a regiment of militia, for a publication reflecting upon the officers of the regiment generally, without averring a special damage.*

The declaration stated that the plaintiff was an ensign commanding a company of riflemen, called the *Albany Greens*, in the regiment of riflemen commanded by Colonel *Lockwood*. The libel set out in the declaration was in the following words: " In 1813, some companies of a regiment of riflemen were called upon to perform a few weeks' service. Major *Koon*, and about half a company, turned out, and acquitted themselves reputably. They were the whole nett proceeds of the regiment. Most of the regiment commanded by Colonel *Samuel M. Lockwood*, and particularly the *Trojan*, *Albany*, and *Hudson* Greens, with the honourable exception of a single man, a humble tailor, Mr. *Larkin*, of *Troy*, refused to rendezvous. The officers of these companies discovered great anxiety to prevent their men from going, and displayed much art and duplicity to accomplish that object, assuring the men that the governor had no power to call the militia into service ; that he had ordered out 5,000 men, when the president had required but 1,500 ; that there was no law to punish delinquencies : and that, if there were, the government dare not execute it ; and that they, the officers, would undertake to pay all the men's fines. In these representations they were backed by old tories and worthless pettifoggers, with such matchless effrontery, that the men finally yielded to the solicitations of their officers, and concluded to set the laws at defiance. Now mark the issue. The court martial was regularly instituted, convened, and the delinquent officers and soldiers brought before it, to show cause why they should not be punished. It appeared before the court, that the only corps called out was *Hopkins's* brigade, which consisted of a less number of men than the 1,500 required by the president, and that all the other representations which the officers had made to their men were equally false. Upon this the officers, very

NEW-YORK,
Oct. 1815.

SUMNER
v
BUEL.

cunningly, and, I think, very basely, got their own necks out of the halter, by alleging that they were all anxious to go, and appeared at the place of rendezvous for the purpose, but, to their great mortification, their men deserted them in an unexpected and cowardly manner. By these, and other hypocritical devices, the officers, to a man, escaped punishment altogether, but suffered their men to be severely fined. The collection of these fines by the marshal, of which notice is given in the public papers, will probably consign many of these deluded men to a prison. They now begin to be sensible of the trick which has been played upon them, and are denouncing their officers." There was no special damage alleged in the declaration.

*Tillotson*, in support of the motion, contended that, on principle, this action could not be maintained, there being no personal allusion to the plaintiff, nor any thing by which the identity of any individual libelled, could be ascertained. A writing, to be a libel, must contain injurious reflections on some particular person or individual; general reflections, on any class or order of men in society, do not constitute a libel, or give any right of action, or matter for an indictment.* It is true, that where a colloquium is stated, and, by proper averments, the plaintiff is ascertained to be the person intended to be libelled, as in the case of *Van Vechten* v. *Hopkins*, an action might be maintained. But there are no cases which go the length of supporting the present action; and it would be a violation of all principle, to permit every individual of a particular class of men, to bring his action, for a general reflection on that class, without there being any personality in the writing, or damage sustained in consequence of it, by any one.

*Van Vechten*, contra, insisted, that, though it was necessary to support this action, that some particular person should be intended as the object of the libel, yet he need not be named; but it was sufficient if he was described, or alluded to, in the writing. The present is not a libel on the army, or militia, generally, but on the officers of three particular companies of a particular regiment. There is then a designation of the persons intended. Though a libel on the members of the bar, generally, would not furnish a ground of action for each individual of the profession, yet a writing containing injurious re-

* 1 Ld. Raym. 486. 3 Salk. 224. 3 Barnadist. 138 Cro. James, 107. 6 Bac. Ab. 232. 3 Hawk. P. C. b. 1. ch. 73. s. 9. 3 Johns. Rep. 22.

flections on three or more lawyers, concerned in a particular cause, would be a libel.

In *Gidney* v. *Blake*,* where the defendant said, "Your children are thieves, and I can prove it;" the court held, that the words applied to all the children of *G.*, and the *colloquium* being of, and concerning, the plaintiff, one of the children, the action was maintainable.†

NEW-YORK,
Oct. 1815.

SUMNER
v.
BUEL.

* 11 Johns. Rep.
54.

† Hob. 89. Cowp.
672. 689.

*Van Buren,* in reply, said, that cases of indictments for libels, stood on distinct principles from civil suits for the private injury, and furnished no rule for the decision of this case; and that no case of a civil suit could be found, brought by the individuals of a class, or order of men, for a publication reflecting on that class, or number of men, generally.

THOMPSON, Ch. J. This is an action for a libel, published by the defendant, against the officers of Colonel *Lockwood's* regiment, of whom the plaintiff is averred to be one. But the publication has no particular or personal application to the plaintiff. The present is a motion in arrest of judgment, on the ground of the generality of the libel.

It is a general rule, that no writing whatever is to be deemed a libel, unless it reflects upon some particular person. (*Hawk. P. C.* b. 1. ch. 73. s. 9.) A writing which inveighs against mankind in general, or against a particular order of men, is no libel, nor is it even indictable. It must descend to particulars and individuals, to make it a libel. (3 *Salk.* 224. 1 *Ld. Raym.* 486.) These are general rules; but their application to particular cases often presents difficulty. An action for a libel is for the purpose of recovering damages for an actual injury proved to have been sustained, or which the law presumes that the party libelled has suffered. It is a private remedy for an individual injury. If the libel is either vague and uncertain, or has no personal application, it cannot fairly be presumed that any damages have been sustained. Although a jury, in assessing damages, may take into view other considerations of a more public nature, yet they are merely collateral to, and not the basis on which the action is founded. Where the object is public example, and the punishment of the party, the more fit and appropriate remedy is by indictment. If the plaintiff, in this case, had averred, and proved any special

damages sustained by him, I am not prepared to say that he would not have sustained an action. But from the generality of the libel, the law will not presume damages; and it would, therefore, be repugnant to the object and foundation of the action, and against the policy of the law, to sustain a private suit. This may be considered as somewhat analogous to the remedy for a public nuisance: it is a well-settled rule that no action will lie by an individual, for a public nuisance, unless he has sustained some special damage; and the reason assigned for it is, that it would create such a multiplicity of suits that the party might be ruined by the costs. The same reason applies to cases of libels of a general description, having no particular or personal application. The offender, in such case, does not go without punishment. The law has provided a fit and proper remedy, by indictment; and the generality and extent of such libels make them more peculiarly public offences. But to give a private suit, on such general libels, where no private damages have been sustained, would be opening a door that would lead to mischievous consequences; and, in many cases, to the ruin and destruction of a party, by the payment of costs. It is no answer to this objection, to say, that a party may refrain from publishing libels, and so not expose himself to such consequences: the law, in many cases, interposes to prevent the multiplicity of suits, and the unnecessary accumulation of costs, although parties are, in default. It is very difficult to lay down any precise and satisfactory rule on this subject; extreme cases may be stated on both sides of the question, on which no difference of opinion would be entertained, and which would yet seem to fall within the same general rule. Had this publication applied to the officers of the army of the United States, or to the officers of the militia of the state of New-York, or to the officers of the militia of any particular county, it would certainly not be pretended, that each individual, falling within the general description, could maintain an action; and yet the libel, by proper averments, might be individually applied, as well in those cases, as in the one before us. So, a libellous publication generally, against the Bar of the state of New-York, or of the city of New-York, or of any particular county, would not give a private action to each individual of the profession, within the respective districts of country, although a proper averment might apply it to each individual.

Numerous other cases, of a similar nature, might be put. It is not, therefore, the want of certainty as to whom the libel might be applied, by necessary averments, which prevents the maintenance of private suits; nor is it because the libel applies to an order of men; for, in some of the cases put, the application would be only to a portion of such order. But if this be the principle upon which private suits, in such cases, are denied, the case before us falls within it; for the officers alluded to are a portion of the order or class of militia officers. There must, I think, be some other reasons which govern cases of this kind. The books are silent on the subject; and I know of none more sound and just than those I have already alluded to, that, where the libel has no particular and personal application, and is so general, that no individual damages can be presumed, and the class or individuals so numerous to whom it would apply, that great vexation and oppression might grow out of a multiplicity of suits, no private suit shall be sustained, but proceedings against the offender must be by indictment. The case of *Foxcraft* v. *Lacy*, (*Hob.* 89.,) has been relied upon in support of this action. It does not appear to me that the principle of that case applies. The colloquium there, shows the particular and personal application of the slander to the plaintiff, as well as the other persons; and the same remark will apply to the case of *Gidney* v. *Blake*, decided in this court, (11 *Johns. Rep.* 54.) But the correctness of the report of *Foxcraft* v. *Lacy*, may be questioned. In *Symm's* case, (*Godb.* 391.,) it is said, that it was adjudged that the action would not lie. (See, also, 1 *Viner*, 510. note.) Upon the whole, after the best consideration I have been able to give the subject, I think it would be unfit, and against the soundest principles and policy of the law, to sustain private suits upon such general libels, where there is no particular personal application, and no special damages alleged. The opinion of the court, therefore, is, that the motion in arrest of judgment be granted.

SPENCER, J., and YATES, J., were of the same opinion.

VAN NESS, J. This is a motion on arrest of judgment, in which we are to assume, that all the material averments and allegations in the declaration are true; and the only ques-

tion is, whether the plaintiff is designated with sufficient cer-
tainty in the libel, to enable him to maintain his action? On
this point it seems to be agreed, that it is not material whether
the person, of whom words are spoken or written, be described
nominally, or indirectly, provided his identity be ascertained;
and lamentable, indeed, would be the state of society, if the law
were not so; for then the character of any member of the com-
munity might be wounded and traduced, with impunity and
triumph, by those whose hearts are as corrupted and malignant
as their tongues or their pens are slanderous and unbridled.

To my comprehension, the plaintiff, in this case, is as clearly
one of the persons intended to be libelled, as if his name had
been mentioned. It really seems to me, that no person who
can read and speak *English*, upon casting his eye over this
declaration, could hesitate an instant in applying the libel to
the plaintiff; and if this be so, I had supposed it necessarily
followed that this motion ought not to prevail. To show that
I have not expressed myself too strongly, let me appeal to the
facts contained in this record. The declaration states, among
other things, that at the time of publishing the libel, the plaintiff
was an ensign, belonging to, and commanding, as such ensign, a
company of riflemen, commonly called the *Albany Greens*, in a
regiment of riflemen, commanded by Colonel *Samuel Lockwood*;
that the defendant, "well knowing all and singular the pre-
mises," maliciously published the libel in question, of and con-
cerning the plaintiff, as such officer as aforesaid. The libel,
among other things, states, that some companies of a regiment
of riflemen, commanded by Colonel *Lockwood*, were called upon
to perform a few weeks' service. Major *Koon*, and about half
a company, turned out, and acquitted themselves respectably,
&c. Most of the regiment, and particularly the *Trojan, Alba-
ny*, and *Hudson Greens*, with the honourable exception of a
single man, a humble taylor, from *Troy*, Mr. *Larkin*, refused
to rendezvous, &c. The *officers* of those companies discover-
ed great anxiety to prevent the men from going, &c.; assuring
the men, that they, the *officers*, would undertake to pay all the
men's fines, for sixpence. The officers, commanding the com-
panies before specified, are alluded to in various other parts of
the libel. The plaintiff avers, that he was an ensign in a com-
pany of riflemen, called the *Albany Greens*, in Colonel *Lock-
wood's* regiment of riflemen. The libel states, that this compa-

ny, among others, was ordered into actual service, and that the officers of this company, (of whom the plaintiff was one,) and of the other two companies, exerted their influence to produce a disobedience of the order. If this does not designate the plaintiff as one of the persons libelled, in such a manner as that " he who runs may read," I have been very unfortunate in understanding the terms in which the declaration is expressed. The doctrine contended for on the argument, and which I do not mean to controvert, namely, that when defamatory words are spoken of an order of men, no individual belonging to that order can maintain an action, has no application to this case. Were this libel directed against the officers of the militia, generally, then the plaintiff could not have been discriminated from the whole order, as a peculiar subject of attack; and, of course, the suit could not be maintained. The libel in question is not against the officers of the militia at large, as an order of men, but the individuals intended to be injured are selected from that very order, being particularly designated and described as belonging to a certain regiment, and as commanding certain companies, composing a certain part of that regiment. By law, there are but three officers attached to a single company of riflemen, a captain, lieutenant, and ensign; and, in the case under consideration, those three officers, of three respective companies, are charged with treacherous disobedience of the express commands of the commander in chief, and audaciously endeavouring, by the combined influence of their official authority and personal example, to persuade the men under their command to violate their allegiance to their country and its laws. Now, to say that he who writes or speaks thus concerning nine persons, described and designated with such certainty and precision as to preclude the possibility of mistake, speaks or writes concerning an order of men, (I must be pardoned for saying,) is absurd.

Suppose a man should publish a libel upon the Bar of the state of New-York, generally; now, as this would be a libel upon an order of men, no particular individual member of the order could maintain an action. But suppose the libel should designate the counsel who argued a particular cause; or, (to present a case more precisely resembling that under consideration,) suppose it should designate the counsel who argued three separate causes, which causes are specified in the libel, by giving

NEW-YORK,
Oct. 1815.

SUMNER
v.
BUEL.

the respective names of the plaintiff and defendant in each particular cause; would the libeller, in this instance, defame an order of men, or determinable individuals of that order? Can it admit of a doubt, that each of the counsel who had been engaged in such argument could maintain an action? Again; suppose a libel upon the whole body of the clergy of this state: here it would be upon an order of men, and, therefore, an action could not be sustained by any single clergyman against the author of such libel. But suppose, again, that the libellous publication should implicate nine ministers of the gospel, who performed divine service in three churches in one of our cities, and should so describe these three churches, as to render their identity notorious and indubitable; would any man seriously maintain that, because the peculiar baptismal names of these nine persons were not expressed, they should *therefore* be remediless? Shall this, too, be considered as a libel upon an order of men? I cannot assent to the idea that the number of persons who may be libelled, affords the rule to determine whether or not an action will lie. Such a rule would be unjust and arbitrary. The libeller who calumniates a number of persons, by name, is liable to an action by each; and, in such a case, he would hardly be allowed to say, even in extenuation of his offence, much less in bar to the action, that, because he had exposed himself to so many actions, he ought not, therefore, to be punished at all. If such a rule should be adopted, the calumniator, who assails and reviles a great number of individuals in the same malicious publication, will escape; while the less guilty and less hardy slanderer, who has traduced the character of a single man only, shall be punished. Rather than adopt such a rule, I would consent to strike the whole law concerning libel from our municipal code.

On this point, there is an adjudged case, that of *Foxcraft* v. *Lacy*, (*Hob.* 89.,) which is decisive; and upon the authority of which, this court decided the case of *Gidney* v. *Blake*, (11 *Johns. Rep.* 54.) That case, sanctioned and adopted as it is by this court, in my judgment, settles all the points now before us.

It was asked, in the progress of the argument of the case, if a libel should charge "every officer of the army, without exception, from the highest to the lowest," with cowardice, whether every officer could maintain an action? I answer, in the first place, that such a libel must be considered as upon that whole order of men;

and, therefore, no action would lie. But suppose this answer not to be satisfactory, what does it prove? Certainly, not that the plaintiff in this cause shall have no redress, because eight other men have suffered equally with himself. The soundest and most salutary principles in the world may be carried to an unwarrantable extent. The case last put is an extreme one, and not likely to occur. I will state another case. Suppose a libel should be published upon all the officers of the army, by name; could each maintain an action? I confess I am not prepared to give an answer; nor would an answer in the negative touch the point now under consideration. The solidity of a principle is not to be tested by extreme cases, which are usually not embraced within the reason or policy upon which the principle is founded. The application of it, in such instances, must be regulated and restrained by sound judicial discretion, in such a manner as to preserve the principle, and, at the same time, to prevent it from being perverted.

My opinion, in this case, accordingly, is:

1st. That this is not a libel upon any order of men;

2d. That the plaintiff is designated with sufficient certainty to enable him to maintain his action;

3d. That this right of action exists, notwithstanding the defendant may have exposed himself to other actions, which may be commenced by the other officers described in the libel in question, and that the motion in arrest of judgment ought, therefore, to be denied.

PLATT, J., was of the same opinion.

Motion granted.