After advisement, the following opinions were delivered:
By the Chancellor.
The only question for our consideration in this case, is whether the articles set forth in the declaration are personal libels upon the plaintiff. The article set forth in the two last counts of the declaration, is only a reiteration of the allegations of the first publication, and therefore cannot be a personal libel on the plaintiff, if the first was not.
It is perfectly clear from reading the first article, that the prin- [ *191 ] cipal charges therein, if not every thing that *could render that article libellous, have no reference whatever either to this plaintiff personally, or to the malting business earned on in the establishment in which he says he was interested as a partner. Most of the details of the article relate to what had taken place in certain malting establishments on the hill, long before the plaintiff pretends he had any interest in any malting establishment there. He merely states that he was interested as a partner before and at the time of publishing the alleged libel, without saying how long before; proof that he had been a copartner twenty-four hours before the publication in February, 1835, would therefore sustain the allegation. And as he states the names of all the persons who then carried on the business of malting there, it is perfectly evident that the malting establishment of Fidler & Taylor and Robert Dunlop, in which it was stated that the filthy water had been used six or seven years, was not the malting establishment in which this plaintiff was interested as a partner in 1835, in company with Launcelot Fidler and Peter Ballentyne. It does not even appear in the declaration that Fidler, the copartner of the plaintiff in February, 1834 was the same person who had been concerned in the malting establishment of Fidler & Taylor & Dunlop for several years previous-. But if he was, perhaps the defendant could say with truth that the malting establishment in which it now appears this plaintiff was interested, did occasionally rely upon water taken from the places before described, without intending to charge all the other partners, interested in that establishment at the time of the publication, with a knowledge that the filthy water was used in their establishment, or even that it had ever been thus used since the plaintiff became a partner therein. Without reference to the question, therefore, whether one individual of a numerous class embraced in a libel by a general description, can bring a civil suit, I do not think this charge of the belief of the writer, that a malting establishment, carried on by several partners, occasionally relied upon impure water for the malting of grain, can be considered a personal libel upon each member *147 of the firm ; and I have great doubts whether an action could be sustained by the copartnership itself for a *libel of the firm [ *192 ] in its business, without averring special damage'.
If it were a fact of public notoriety that brewers could not be induced to buy malt which they had reason to believe was prepared with stagnant water, and that such malt was of less value in the market than that in which the steeping or first process of artificial germination had been carried on with perfectly pure water, the court would allow the firm to sustain an action for a libel upon its business, without alleging any special damage. Even in that case, however, it would be a perfect justification of the alleged libel to show that impure water was occasionally used by any member of the firm, although the other copartners were not cognizant of the fact; or if it was so used by the general agents of the firm. I believe, however, it is a fact well known to every intelligent brewer, as well as maltster, that the process of germination when carried on with pure water is not as perfect, and of course the malt will make less beer, than it will when the malting is carried on by the use of turbid water. The object of the steeping is to expand the barley with humidity, and thus to prepare it for germination, in the same way that the moisture of the earth prepares the seed sown in it for the growth of the radicle and plumula, or the embryo root and stem of the future plant. Every farmer knows that the first process of natural germination is more perfect when the water which swells the grain reaches it through the medium of a soil made rich by the decomposition of animal or vegetable matter, that it can be if that matter is suffered to percolate through clean sand or gravel only. The real ground of complaint in reference to this publication, therefore, probably is, not that the malt made by the maltsters on the hill was not as good and as saleable to the brewers as the malt made by any other persons, but that the brewers under the hill and elsewhere could not sell their beer after the fact had been made known to the public that the process of making the best malt was to supply the steeping tub with impure water. I am, therefore, of opinion that if this plaintiff had been named in the publication itself as one of the persons who occasionally relied upon this impure water for *the steep- [ *193 ] ing of the barley in his malting establishment, he could not have recovered in this action for a libel upon himself' personally, without averring that his malt was rendered unsaleable or that he had sustained other special damage in his business as a maltster in consequence of this publication.
There is no reason, however, to doubt the correctness of the decision of the supreme court of this state in the case of Sumner v. Buel, 12 John. Rep. 475, which was acquiesced in by the plaintiff ip that case, and has been considered as the settled law of this state for more than a quarter of a century. J think Chief Justice Thompson was incorrect in supposing that .the ■ *148 case of Foxcroft v. Lacy, 1 Hob. Rep. 89, relied upon by Judge Van Ness, was misreported. He was undoubtedly misled by the note vto this case in Finer, which states that the Reports of Godbolt show the decision to have been the other way. 1 Vin. Abr. 510, pl. 5. The counsel for the plaintiff, upon the argument, undoubtedly gave the true explanation of the report of Symes' case; though from the careless manner of stating the decision of the court in the case of Symes, C. J. Thompson supposed the reporter wa; stating the decision in the case of Foxcroft v. Lacy, as Mr. Viner had previously done. Professor G-reenleaf has also fallen into the same error in his collection of doubted and overruled cases. That the founder of the Vinerian professorship, however, did not doubt that Hobart and Jenkins had given the correct report of that case, is evident from the fact that he afterwards cites it as an authority to show that in "verbal slander, words that are of themselves uncertain in their application, may be made to apply to the plaintiff, by averring that they were spoken of the plaintiff in a colloquium, or a discourse of and concerning him. See 1 Viner Abr. 524, pl. 17.
1 agree, however, with the former chief justice and the other judges, who decided the case of Sumner v. Buel, that the principle adopted in the case of Foxcroft v. Lacy was wholly inapplicable to the case which was then under consideration by the supreme court; and is equally inappli- [ *194 J cable to the present case. In verbal slander, the whole *conver'satio.n is seldom set out, for if that was required it would generally be impossible to prove the whole conversation as laid in the declaration. It is therefore allowable in such cases to set out the actionable words merely, and to show that they were intended to be applied to the plaintiff, and must have been so understood by those who heard them, by averring that they were spoken in a conversation of and concerning him ; and the declaration in such case will be good, if the actionable words could have been applied personally to the plaintiff, leaving him to establish by proof upon the trial that the defendant did in fact apply them to him personally, and not merely to him and others as a class ; and that those who heard the words, understood them to be thus individually and personally applied. It was upon that principle that the case of Gidney v. Blake, 11 John. 54, referred to in the dissenting opinion of Mr. Justice Van Ness was correctly decided. In that case one of the counts expressly averred that there was a conversation of and concerning the plaintiff C. Gr., one of the children, and not merely of the children of D. Gr. as a class, and the court say the colloquium conclusively points the words, and designates the plaintiff as one of the children intended; and that as one count was good) that was sufficient, on a general demurrer) to the whole declaration.
It is otherwise, however, in the case of libels, where the whole is in writing or print, and all the external facts to show the application of the libel- *149 long matter must be spread upon the declaration, to enable the court to see that it must have been applied to the plaintiff as an individual, and not to a class of persons merely, when he sues for a personal libel on himself. Here the charge in the publication, that there were several malt houses on the hill, all of which, as the defendant’s informant believed, relied occasionally on water taken from such places as had been described, did not necessaiily, neither could it by common intendment be construed to charge every individual who was interested in any malting establishment at that place, either as a copartner or otherwise, with having been personally concerned in the use of the impure water occasionally; or that every individual thus interested had a personal knowledge of the fact. The *averment there- [ *195 ] fore, that there were only six malt houses on the hill, in which twelve persons were interested, either as copartners or sole owners, and that the plaintiff was interested in one of them as a co-partner with two other individuals, does not necessarily show that the writer of the article intended to apply this particular clause of it personally to the plaintiff. Neither do I believe that a reader of the article who was fully acquainted with all the facts stated in this declaration would, in reading this article, be likely to give it a personal application to each of these twelve individuals. The fair intendment of the article, in connection with these facts is, that in one brewing establishment there, which was once carried on by Fidler & Taylor & Dunlop, water which was very filthy and impure, had for a long time been used ; and that there were several other malting establishments there, at all of which water from these places had occasionally been used by some persons connected with the business of the establishment. The remark that the person who had made the affidavit before Chief Justice Savage was astonished that the brewers, against whom he had no ill-will, should deny facts so easy to be proved, does not, as the counsel supposed, refer to the knowledge of all the maltsters on the hill. It probably referred to some denial which had been made by brewers under the hill, or elsewhere, that the process of malting was not generally carried on by the use of pure water. At all events there is no averment in this declaration which gives it any proper application to all the maltsters on the Albany hill. I think, therefore, it would be> stretching the law rather too far in this case, to give this publication a personal application to this plaintiff, for the purpose of enabling him who probably knew nothing of the filthy practices stated therein, to mulct the writer of the article in damages for a charge which no one believes he ever intended to make; when, as a fact of public notoriety, it is well understood, out of this record, that every substantial allegation in the publication has been declared to be true by the verdict of a jury.
There are many cases in the books where the writers and publishers of *150 defamatory charges, reflecting upon the conduct of particular [ *196 ] classes, or bodies of individuals, have been proceeded against by indictment or information, although no particular one was named or designated therein to whom the charge had a personal application. All those cases, however, whether the libel is upon an organized body of men, as a legislature, a court of justice, a church, or a company of soldiers, or upon a particular, class of individuals, proceed upon the ground that the charge is a misdemeanor, although it has no particular personal application to the individual of the body or class libelled, because it tends to excite the angry passions of the community, either in favor of or against the body or class in reference to the conduct of which the charge is made, or because it tends to impair the confidence of the people in their government or in the administration of its laws. It was upon this ground alone that the information was finally sustained in the case of The King v. Osborne, 2 Barnard. Rep. 138, 166; W. Kelynge, 230, S. C., though upon the granting of the rule to show cause, Lord Raymond O. J., doubted whether even an information could be sustained, because no particular Jeios could show to the court that they were pointed at more than others, and yet the libel in that case was as definite as in this as to the class of individuals intended. By reference to the report of the case in the note in Swanston, to which our attention was directed on the argument in connection with the report in Kelynge, it will be seen that the article was entitled “ A true and surprising relation of a murder and cruelty that was committed by the Jews lately arrived from Portugal," &c.; and it then goes on to describe them as living near Broad-street. The supreme court was therefore right when it decided that private suits could not be sustained for this class of libels, and that the only proper mode of proceeding against the libellers in this state is by indictment. I am not at present aware of any case, either in this state or in England, where a private action for a libel reflecting upon a body or class of persons has been sustained. The only case, indeed, that I know of in any other country is one suit in Scotland, brought by a lieutenant colonel in behalf of his whole regiment for defamation, in calling them a regiment of ¿•cowards and blackguards. In that case the defendant did not [ *197 ] appear upon the *trial, as he was out of the country ; and the lord commissioners, before whom the issue was tried, expressly told the jury that the damages given by them were not for an individual injury to the person, but for an injury done to the regiment. Shearlock v. Beardsworth, 1 Murray's Rep. of Jury Cases, 196.
I have no doubt, therefore, that the decision of the supreme court in this case was in conformity with the law as now settled, both here and in England ; and that the judgment of that court should be affirmed.
As I have been president of the state temperance society from the time *151 of its first- formation, it may be proper for me to state, that I was not con. suited as to the propriety of the publication of the article in question, and never heard of such publication until many months afterwards; and I have now no recollection of ever seeing the article itself until I saw it in the error book in this cause. I have not, therefore, thought it my duty to with, hold my opinion in the decision of the important legal principle which has arisen for the first time in this court of denier resort; although the publication, out of which the question arises was professedly intended to aid that cause with which I have been so long and so intimately connected.
By Senator Vekplanck.
In a publication charging a number of brewers and maltsters in the city of Albany with certain unwholesome and filthy practices in the process of malting, it was said that “ there are several malt-houses on the hill, (at Albany) all of which rely on water taken from such placesthat “ the facts stated are known, to hundreds residing in the neighborhood of the malting establishments,” together with other similar language relating to these malthouses. The plaintiff is a partner in one of these malthouses “ on the hill,” of which there are six, owned by several different firms, each composed of two or more partners. This charge, if false and malicious, is admitted to be libellous if made against the plaintiff singly or by name ; and as it is now presented on this demurrer, it must be presumed to be *tbus false and malicious, as we must [ *198 ] here assume the material allegations and averments of the declaration to be true.
The question, therefore, is whether the charge thus made amounts to a personal imputation against the plaintiff ? It is very evident that the charge is general, and includes all those who own and carry on business in the several malthouses described. Of these persons, the plaintiff is one. The accusation includes all of them ; and this therefore does not resemble those ancient cases in libel or slander, where it was held with more strictness than courts now entertain, that when a charge was made upon some one person indefinitely out of many, without any indication of the individual meant, the action was not maintainable on account of the uncertainty of the charge. But the supreme court hold that the alleged libel is not an imputation upon any individual, but is a general censure of a class of persons which happens to include the plaintiff; so that according to the decision in Sumner v. Buel, 12 Johns. 475, it can have no such special personal application as to furnish ground for an action.
The distinction between a libel aimed at an individual, and the censure or satire of a whole class of the community to which that individual happens to belong, is unquestionable ; being alike founded in the reason of the thing and supported by authority. No better definition of a libel can be given *152 than that of Chief Justice Parsons. “ A libel is a malicious publication expressed either in printing, or writing, or by signs and pictures, tending either to blacken the memory .of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt and ridicule.” 4 Mass. R. 168. To the same effect is the definition given by Hamilton, in the celebrated Croswell case, and since repeatedly adopted in our own courts, as in Steele v. Southwick, 9 Johns. 215. In a private suit, it is the injury inflicted upon the individual for which pecuniary - compensation is sought.
It is the malicious intention of the libeller towards the injured individual that authorizes the latter to seek redress. The proof, or else the necessary presumption of individual malice, and the inflicting individual injury, are the sole grounds of the civil action and of the remedy it affords. £ *199 ] General censure or "reproof, satire or invective, directed against large classes of society, whether on moral, theological or political grounds, cannot ordinarily be prompted by individual malice or intended to produce personal injury. The politician who assails the opposite party, the polemical divine who attacks the doctrine or the discipline of another church or sect, or the moral satirists who lashes the vices or the foibles of his age and nation, ought not to be held responsible in private suits for the bold avowal of opinions true or false. The principle upon which the civil remedy is allowed, does not- apply here; and the great interests of society require that it should not be made to apply. It is far better for the public welfare that some occasional consequential injury to an individual, arising from general censure of his profession, his party, or his sect, should go without remedy, than that free discussion on the great questions of politics, or morals, or faith, should be checked by the dread of embittered and boundless litigation. When such publications so far transcend the limits of fair discussion or legitimate moral rebuke, as to threaten public injury, they are most effectually as well as most properly prevented or punished by public prosecution.
But both in civil and in criminal prosecutions, whether it be punishment that is sought, or compensation for an injury inflicted by libel upon an individual, the rule laid down long ago in Rex v. Atree, 3 Salk. R. 224, must apply. “ Where a writing inveighs against mankind in general, or against a particular class of men, as for instance—men of the gown; this is no libel; but it must descend to particulars and individuals to make it a libel.” Yet it does not thence follow, because a man is libelled—not by name or title or other specific description of himself, but under some such description of persons as includes certain other persons, and marks the individuality of each of them as much as if they were all severally named— that therefore this is no libel, having a personal application upon which a civil suit can be maintained. The application of the injurious charge to a *153 particular person must be made on the same principle that the meaning of the charge itself is explained. Both are to be taken according to the common understanding of men and the customary *use of [* 200 ] language. In construing the meaning of a libel, courts and juries are to take the words “ as all men understand them; and judges cannot understand them differently in court from what they would out of court per Le Blanc, J. Woolnoth v. Meadows, 5 East. R. 463. “ Upon occasions of this sort,” says Judge Buller, “ I have never adopted any other rule than that frequently stated by Lord Mansfield to juries, desiring them to read the paper stated to be a libel, as men of common understanding, and say whether in their minds it conveys the sense imputed.” 2 T. R. 206. So too as to the personal application of the libel; whether it be a general censure of a class of society, or is levelled at one or more individuals, must be a question for every day common sense to decide.
The Roman Catholic clergy, or the clergy of the Dutch Reformed Church are orders or bodies of men. Theological warfare might lead some polemic to make weighty and unfounded charges against the character and morals of either class. However much we might regret the absence of Christian charity, or however individuals might accidentally suffer from such criminations, yet the law could not authorize civil remedies without injurious effect upon the right of free discussion, so essential to the establishment and the vindication of truth. But if among general censures of the clergy, imputations seriously affecting private character were made against “ all the Roman Catholic clergy of Albany,” when it was well known that there were but two, and so averred; or against “ all the clergy of the Collegiate Dutch Church of Kew-York,” (of whom it might be averred and proved that there are but three,) can it be doubted that this charge was levelled at those two or those three individually ? So a theoretical reformer of the law, of the school of Jeremy Bentham, may assail the judges of the land, and although he may vilify an honorable and learned body of men, he intends no personal injury which should be compensated by the recovery of damages. But suppose in the course of such general invective against those who administer our laws, a charge of corrupt and partial decision in a particular case to have been made against “ all the present judges of the supreme *eourt.” Is not this to the common under- [ *201 ] standing of men as clear as if Judges Kelson, Bronson and Cowen were distinctly named.
Again: let us imagine some general satire or invective against the whole course of our state legislation, to appear in print. Much of this might have no application except to the legislature as a body, and could only be re. buked legally by a criminal prosecution. But if in giving examples of the wide spread corruption charged, a more specific accusation of bribery in *154 some given case, were made against “ all the members of the finance committee of the senate,” can it be doubted, that each of the three senators composing that committee is as much and as clearly charged with crime, and held up individually to public odium, as if they had been severally so charged by name ? It is not easy to lay down a definite rule which would distinguish in the innumerable cases that -may occur, when the libel is directed against the individuals of a class, and when it is merely censure of the class as such. But it is very safe to leave the question to be settled, whenever it arises, upon the same principle which courts uniformly apply to the interpretation of the words conveying the libellous charge itself. The reason of the thing is the same in both instances, and the authorities that govern one class of indirect and ambiguously expressed libels or slanders, apply equally to the other. Thus in the case of Goodrich v. Wolcott, 3 Cowen R. 231, affirmed in our own court, 5 Id. 714, “ The inquiry is not said Judge Sutherland, whether the words could, have been understood in any other way, but whether that is the construction which common people naturally put upon them.” “If the words were of doubtful signification, it is the province of the jury to decide in what sense they are used.” It is only when the words are such as cannot in any sense be slanderous, that the court can determine that they are not sufficient to form the legal basis of an action; but whenever words are capable of more than one construction, it is the province of the jury to determine in what sense they were meant. This is the rule in which, I believe, all the American cases of any authority con- [ *202 ] cur with *all the English decisions for the last hundred years, for several of the older ones were, as Lord Mansfield said, 1 Cowp. R. 672 ; “ pregnant with the nimia subtilitas which Lord Coke so justly reprobates.” Upon the same principle, if it appears clearly and undeniably on the plaintiff’s own declaratory statement of his case, that the charge was made against a whole body of men, such as lawyers, clergy or brewers, &c. this is not a libel upon any individuals of that class, and the courts must so pronounce it. But if the words may by any reasonable application, import a charge against several individuals, under some general description or general name, the plaintiff has the right to go on to trial, and it is for the jury to decide, whether the charge has the personal application averred by the plaintiff. Certainty as to the person is to be judged of by the same rule, as the certainty of the accusation. In the present case, it does not appear on the face of the declaration, that the accusation could not have a personal application, whilst the plaintiff avers that it was a charge against several individuals of which he was one. The generality of the description in this case isj therefore, in my opinion, not such as to afford sufficient cause for demurrer.
It may be said in opposition to this conclusion, that the decision of our *155 supreme court, in Sumner v. Buel, 12 Johns. R. 475, which Judge Cowen considers as governing this case, must after the lapse of time for which it has remained uncontradicted, be regarded as conclusive authority. That decision was made by a divided court, and I should myself incline to the reasoning of Judge Yan Hess, concurred in by Judge Platt, rather than to that sustained by the decision of the other three judges. Still the theory of the law as there laid down, does not necessarily contradict the doctrine I have maintained, and the only question is as to the right application of the principle. The case itself was near the dividing line, between a charge against a body of men assailed as such, and an imputation upon a large number of individuals, libelled under the name and description of the military body to which they belonged. Supposing, therefore, that decision to be correct, yet it does not necessarily govern any other *case, where the designation of the class as such is not at least [ *203 ] equally clear. But it comes to us with the diminished authority of a court' divided three against two; it is besides contradicted by other authorities ancient and modern, of our own courts as well as those of England, in relation to words spoken, which cannot in this respect be interpreted or applied upon any different principle from words written or printed. Thus in Foxcraft v. Lacy, Hobart R. 89, Lacy had charged “ the defendants” in a certain suit with a crime. Those defendants were the plaintiff Foxcraft, and sixteen others; yet it was held, that this charge was “ sufficient to entitle every one of the defendants to a several action, as if they had each been specially named.” This ancient case has been repeatedly recognized as sound law in later times, and it was on its authority that several decisions in our own supreme court have been made. Thus in Gedney v. Blake, 11 Johns. R. 54, the slander was this : “ Your children are thieves and I can prove it,” Per curiam. The charge is not vague. The words your children embrace all the children of Gedney ; and the case in Hobart was cited as the governing authority.
I have accordingly no doubt that the present decision of the supreme court ought to be reversed. I hold that a declaration on libel cannot be adjudged insufficient, by reason of the accusation being directed against a class of society, unless it is manifest and unquestionable, that the charge is clearly made against a class of society or an order or body of men as such, and cannot possibly import any personal application tending to private injury. If to the common understanding of men, the description evidently points to .several individuals, or if on the face of the declaration it appears that the words are capable of being so' meant and understood, then the fact of a person being defamed under a description of office or of profession, common to himself and other individuals included in the same libel, cannot take away the right of private action.
*156 I consider it important to the best interest of society to maintain this principle. A contrary doctrine would give great impunity to the libeller. All men prominent enough to become objects of malignant attack [ *204 ] through the press, are likely *to belong to some class of officers, professions, &c. and can be easily described and identified in that manner without being named. The present case happily furnishes a favorable opportunity to establish this principle, without being embarrassed by any peculiarities of the facts or the admixture of prejudices, with the consideration of the legal principles to be decided. So far as we can judge upon the probable result of this case before a jury, from the printed report of a trial on the same alleged libel, there is no great probability of farther litigation ; and the defendant is free from any imputation of personal malice in a moral point of view, however he might be held legally liable to respond in damages, were he incapable of establishing the truth of his charges.
Upon the question being put, shall this judgment he reversed ? the members of the court divided as follows :
In the affirmative: Senators Furman, Hawkins, Hunt, Livingston, Moseley, Nicholas, Root, Skinner, Tallmadge, Yerplanck—10.
In the negative: The Chancellor, and Senators Clark, Dixon, Ely, Paige, Peck, Yan Dyck, Wager, Works—9.
Whereupon the judgment of the supreme court was Reversed.