SMITH O'BRIEN, Respondent, *v.* JAMES GORDON BENNETT, Appellant.

*Libel — what publication exposes the subject thereof to public ridicule — proof that a party accused the person mentioned therein of the act therein charged and referred to the publication to sustain the charge is improper.*

In an action of libel, brought by one Smith O'Brien, who had a place of business in the city of Albany, N. Y., it appeared that the defendant's newspaper printed an article stating that a man who described himself as "Smith O'Brien, of Albany, N. Y.," and a woman named Cook, who accompanied him, had been arrested at Coney Island; that "The man had a large sum of money with him and had been buying drinks with great freedom for Mrs. Cook. In payment for one round of drinks he gave a one hundred dollar bill. When the waiter returned with the change the Cook woman, it is said, took the money." It further stated, in reporting an interview had with the companion of the Cook woman, that they met O'Brien on the train to Coney Island; that "he had been drinking and all the passengers laughed at him. * * * He followed us all day, and we took a drink with him to get rid of him."

*Held,* that the obvious and necessary effect of the publication was to expose the plaintiff to public ridicule and contempt and that it was, therefore, libelous;

That it was error to permit the plaintiff to prove, for the purpose of showing "how the article was interpreted and to whom it referred," that, on a certain

occasion, one Fryer, who was not friendly to the plaintiff, and who was not produced as a witness, had accused the plaintiff of being at Coney Island with a prostitute and being arrested there, and, for the purpose of proving his accusation, produced a copy of the paper containing the article in question.

APPEAL by the defendant, James Gordon Bennett, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 16th day of October, 1901, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 10th day of October, 1901, denying the defendant's motion for a new trial made upon the minutes.

The alleged libel is as follows:

"ARRESTED WITH HER ACQUAINTANCE.

"Mrs. Cook and her companion taken into custody when she kept his change.

"FAKE $100 BILL FOR DRINK.

"They had met on the train and become separated from her woman relative and children.

"HUSBAND'S FAITH IN HER.

"At Coney Island yesterday afternoon a man who said he was Smith O'Brien, of Albany, N. Y., was arrested. With him at the time of his arrest,' was a woman, who described herself as Mrs. Amelia Cook, of No. 185 Guernsey street, Brooklyn.

"The man had a large sum of money with him and had been buying drinks with great freedom for Mrs. Cook. In payment for one round of drinks he gave a one hundred dollar bill. When the waiter returned with the change the Cook woman, it is said, took the money.

"It was then that Thomas Myers called the attention of a policeman at the pavilion to the couple.

"Both were taken to the Coney Island Police Station. Mrs. Cook explained that she and her sister, with two young children of the latter, had met O'Brien on the train and had entered into conversation with him. On the trip from Brooklyn to Coney Island his hat fell off and Mrs. Cook showed him where he could buy another.

### "SHE MEANT TO PREVENT ROBBERY.

"The party then strolled to the seashore. Mrs. Cook's sister and children went in bathing, leaving O'Brien and Mrs. Cook on the beach.

"Mrs. Cook admits taking O'Brien's money, but said she did so in order to prevent the waiters from robbing the man.

"She wept when taken to the police station, and told her story between her sobs, and said she was the wife of a respectable man.

"Mrs. Cook lives at No. 127 Oak street, Greenpoint, with her husband, who is an electrician. He married his wife two years ago in Buffalo. They came to New York two months ago.

"He was astonished when I told him last night that his wife had been arrested, and said he was sure she would not do anything that would warrant her being taken into custody.

"He started for Coney Island with a bondsman to procure her release. He was to have met his wife at Coney Island if he got through work at four o'clock yesterday afternoon. He did not get through at that hour.

### "SAYS HE FOLLOWED THEM.

"Mrs. Eberle, of No. 185 Guernsey street, is Mrs. Cook's cousin. She said: 'My little daughter and I went with Amelia to-day. A man lost his hat on the car. He had been drinking and all the passengers laughed at him. He asked me where he could get a new hat and I told him there were hat stores at Coney Island. He followed us all day and we took a drink with him to get rid of him. My daughter and I went in bathing, while Amelia stood on the beach. We could not find her when we had finished bathing. I have her pocketbook and I have been very anxious about her all the evening.'"

*Robert W. Candler, William Jay* and *Flamen B. Candler,* for the appellant.

*J. Newton Fiero,* for the respondent.

FURSMAN, J.:

A libel has been defined to be " a censorious or ridiculing writing, picture or sign, made with a mischievous and malicious intent

towards government, magistrates or individuals." (*People* v. *Croswell*, 3 Johns. Cas. 353.) " A libel is a malicious publication  *  *  * tending either to blacken the memory of one dead or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule." (*Commonwealth* v. *Clap*, 4 Mass. 168; *Ryckman* v. *Delevan*, 25 Wend. 198.) In the present case the obvious and necessary effect of the publication was to expose the plaintiff to public ridicule and contempt, and it was, therefore, libelous. It refers to the plaintiff by name and manifestly is a publication " of and concerning" him. " A writing published maliciously, with a view to expose a person to contempt and ridicule, is undoubtedly actionable." (*Steele* v. *Southwick*, 9 Johns. 214.) In a case like this the law presumes malice and evidence of express malice is unnecessary. (*Fry* v. *Bennett*, 5 Sandf. 54; *Klinck* v. *Colby*, 46 N. Y. 431.) On the trial, however, the plaintiff was permitted to prove, under objection and exception, that on a certain occasion one Fryer produced a copy of the paper containing this article, and in the presence of the plaintiff and others gave his interpretation of its meaning in words that must have been exceedingly offensive to the plaintiff. The evidence thus admitted is, in substance, that Fryer accused the plaintiff of being at Coney Island with a prostitute and being arrested there, stated that he could prove it, and for that purpose produced the paper containing this article. This evidence was admitted by the learned trial justice for the purpose, as stated by him, of indicating " how the article was interpreted and to whom it referred." This we think was error. In *People* v. *Parr* (42 Hun, 314) it was held that testimony of a witness that he recognized from the article that the plaintiff was the person to whom it referred was improper, and in *Stokes* v. *Morning Journal Assn.* (66 App. Div. 569) it was held that where the article does not refer to the plaintiff by name he may give proof showing that the particular circumstances adverted to in it are descriptive of him and his surroundings, but that he is not entitled to inquire of a witness whether from the article itself he identified the plaintiff as the person referred to. In both of these cases the reason of the rule is stated to be that, if this kind of testimony is admitted, the defendant might call witnesses to show that they did not recognize the plaintiff as the person referred to and that " such testimony would be plainly improper."

In the present case the plaintiff was referred to by name and as " of Albany, N. Y.," where he had a place of business, yet he was per-. mitted to prove that a person who was not called as a witness not only understood the article as referring to the plaintiff, but also to give the interpretation of this third person as to its meaning. The reason given in the cases above cited for holding the evidence improper when directed to identify in cases where the article itself does not specifically name the person libeled applies with equal force to direct evidence as to how others understood it, for, if the plaintiff may call witnesses to prove their understanding in this respect, certainly the defendant may do so. The error is even more vicious when a witness is allowed, as in this case, to state the interpretation that a third person who is not produced as a witness and who is proved to be unfriendly to the plaintiff put upon the article. (*Clary-Squire* v. *Press Publishing Co.*, 58 App. Div. 362, 365.) The case of *Stafford* v. *Morning Journal Assn.* (68 Hun, 467) is not in conflict with these views. In that case the article complained of was an advertisement, the intended and necessary effect of which was to cause persons to address letters to the plaintiff and to call on her with reference to the matters advertised. Under these circumstances the court admitted proof that letters were sent to the plaintiff and that persons called on her to her annoyance, and this was sustained. It was proper in that case to show that the advertisement produced the effect directly intended to be produced by it; but that is quite different from permitting a witness to testify to whom he understood it to refer or what he understood it to mean. We cannot say that in this case the evidence was harmless. On the contrary, it is more than likely to have had great weight with the jury on the question of damages. It is sufficient, however, that this evidence may have affected the verdict, and, therefore, the error in admitting it cannot be disregarded. (*Erben* v. *Lorillard*, 19 N. Y. 302.)

The judgment must be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred ; PARKER, P. J., and CHASE, J., in result.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.