Duer, J.
The complaint and answer in this case, are, perhaps, as extraordinary pleadings as have ever been exhibited in a court of justice ; and it would be the severest condemnation of the code that has yet been pronounced, were we forced to declare them its legitimate offspring. But this declaration we cannot make. The condemnation it implies would be glaringly unjust. These singular pleadings derive no sanction from the code. They are not only inconsistent with its general design, but directly at variance with many of its provisions. The object of the code is to reduce pleadings to the utmost simplicity that, in each case, the nature of the subject, and of the relief sought, will properly admit; and if the rule, which it clearly prescribes, that only those facts are to be stated which constitute *61 the cause of action, or the substance of the defence, and which must be proved by the party alleging them, to entitle him to a judgment, shall be constantly observed, the simplicity that has been sought, and which is intimately connected with the discovery of truth, and the due administration of justice, will be, certainly attained; nor will any cause of obscurity remain, except such as may arise from the imperfections of language, or the unskilful use of it by the pleader, (a.)
It is the palpable and egregious violation of this elementary rule of the code, the true basis of the whole system, that has rendered the pleadings before us so voluminous and complex, that, instead of being “ a plain and concise statement of the facts constituting the cause of action or the defence,” (Code, secs. 142,149,) they seem industriously framed to defy analysis and baffle comprehension. The complaint, however, is by no means liable to this censure in the same degree as the answer. It is, indeed, in no ordinary measure, prolix and verbose, containing numerous allegations and averments, that, with manifest advantage, as well as propriety, might have been omitted, but it is simple, lucid, and brief, compared with the perplexed, obscure, and almost interminable document which purports to be an answer, and which, with truth, and almost without a metaphor, may be described as “ Monstrum informe, ingens—cui Lumen ademptum.”
We shall, however, endeavor to extricate the questions of law that are necessary to be determined, from the mass of irrelevant matter in which they are involved ; and, in proceeding to consider them, we may confine our attention to the answer to the first libel, since the objections to which this is liable, apply, with equal force, to all that follow. Although the twelve libels which are set forth in the complaint differ in the transactions to which they relate, and in the imputations which they convey, yet the answers to each resemble each other so entirely in their structure, that the causes of demurrer, which are *62 assigned as applicable to each, are substantially the same, so that in pronouncing upon the sufficiency of insufficiency of a single demurrer, we shall in effect determine them all.
As the censure that we have passed on the answer considered as a whole, is applicable to each distinct portion of it, we do not doubt that a large proportion of the answer to the first libel would have been struck out on motion, as irrelevant or superfluous ; but neither irrelevancy nor surplusage is a sufficient ground of demurrer. (Smith v. Greenin, 2 Sand. S. C. Rep. 702.) And hence', if those parts of this answer which are covered by the demurrer tender a plain issue, on any material allegation in the complaint, or set up a valid, defence, the demurrer must be overruled ; while, on the other hand, it must be allowed, if the issues which are formed are wholly immaterial, or the defences set up are insufficient in law.
It is alleged on the part of the defendant, that the answer has taken issue on material allegations in the bill in denying :
1st. The intent of the publication.
2d. The truth of the inuendoes. And' that it sets up valid defences by averring:
1st. The truth of the facts stated in the libel; and
2d. That the libel is a fair criticism on the conduct of the plaintiff, as manager of the Italian Opera, and its publication, therefore, privileged.
We shall examine these positions in the order in which they have been stated :—
First, The denial of the intent of the publication, as charged in the complaint. .
The publication set forth in what may be termed the first count of the complaint, we do not hesitate in saying, is libellous on its face, as imputing to the plaintiff dishonest practices and motives, and tending to expose him to public odium or contempt ; and in all such cases, the malicious intent of the publication is not a question of fact, but a conclusion of law. It is the intent which the law implies, and which the plaintiff is therefore not required to prove, nor the defendant permitted to deny. The law most wisely presumes, that every person endowed with reason, foresees and intends all the mischievous consequences that may justly be expected to flow from his voluntary acts; and *63 the administration of justice, both criminal and civil, may be said to rest upon the solidity of this maxim, and the constant necessity of its observance. Hence, where the manifest tendency of a publication is to subject the person to whom it refers to public odium and reproach, the author or publisher cannot screen himself from responsibility, by averring that he acted from a sense of duty to the public, and not from malice to the individual. Unless he can establish by evidence the truth of his statements, he must answer in damages for the injury which he has occasioned, and which, as he ought to have foreseen, he is presumed to have meditated. The absence of express malice— of malice in fact as distinguished from malice in law—may frequently operate to diminish the amount of damages, but can never be opposed as a bar to their recovery, except in that class of privileged communications in which express malice is necessary to be proved to render the defendant liable. The rules that have now been stated, we have been accustomed to regard as elementary. They are laid down by all the text writers, (1 Starkie on Slander, by Wendell ch. 8, pp. 209 and 228 ; 1 Chitty Plead. 424 ; 2 Greenleaf on Evidence, p. 337, § 418,) and are declared or implied in numerous decisions. Without going-through the cases, we deem it sufficient to refer to the judgment of the King’s Bench, as delivered by Mr. Justice Bayley, in Bromage v. Prosser, (4 Bar. and Cress. 252 and 253.) In the opinion of this learned judge, all the prior authorities are carefully examined, and the distinction which he deduces from them between malice in law and malice in fact, is not only lucidly explained, but vindicated by reasons of unanswerable force. It was an action of slander, and the question, whether the words proved, which were plainly actionable, had been spoken maliciously, was upon the trial submitted by the judge to the determination of the jury as a question of fact, and the jury having found a verdict for the defendant, the case came before the court upon a motion for a new trial. The judges were all of opinion that the direction given to the jury was erroneous, upon the ground, that in an ordinary case of slander, (not a case of privileged communication,) the law implies such malice as is necessary to maintain the action, and., consequently, that in such cases, it is the duty of the judge to withdraw the question of *64 malice wholly from the consideration of the jury. It is hardly necessary to add, that a fact which a jury has no right to determine, cannot be put in issue by the pleadings.
The defendant, in this case, has not denied that the publication in question was made by him, “ of and concerning the plaintiff,” and his denial that it was made with the intent or motives set forth in the complaint, is either a denial that the publication is libellous at all, which is an objection that he could only raise by a demurrer ; or it is an attempt to submit to the jury, as a question of fact, the existence of the malice which the court is bound to infer. Hence, unless it shall hereafter appear that the denial of a maliciou.s intent is connected with, and forms a part of the defence of privilege, the issue which it forms must be rejected as immaterial.
It was strongly pressed upon the argument, that the defendant was under the necessity of traversing the allegations in the complaint relative to the intent of -the publication, since these allegations, from their bearing upon the question of damages, ought to be regarded as material, and, consequently, that the defendant, by not denying them in his answer, would be precluded from contesting their truth upon the trial; but we have frequently decided, and until a different construction of the code shall be enforced upon us by a higher authority, must continue to decide, that only those allegations in a complaint are to be deemed material in the sense of the code, which the plaintiff must prove upon the trial in order to maintain his action. It is upon these only that an issue can properly be taken, and it is of these only that the truth is admitted by the omission in the answer of a specific denial. The allegations which relate to the intent and motives of the defendant may possibly be sustained by evidence upon the trial, and may thus operate to enhance the damages, but as none of them are necessary to be proved to entitle the plaintiff to recover, none were necessary to be inserted in the complaint; and, although they may not be liable to rejection as irrelevant, they may be justly treated as redun dant and superfluous.
II. We proceed to the next inquiry, whether a valid issue is formed by the denial of the truth of the inuendoes ?
The praise of ingenuity cannot be denied to the argument of *65 the defendant’s counsel upon this question, yet it involved, as it seemed to us, an entire misconception of the true meaning and office of an inuendo. An inuendo, so far from being an averment of facts upon which an issue can be taken, is not an averment of facts at all; it is merely an inference of reasoning from certain premises, and although, when improperly framed, it may in some cases tend to justify a demurrer, in none, is its truth, or falsehood, a question for the consideration of a jury.
planation of the meaning of the words published or spoken by a reference to facts, previously ascertained by averment or otherwise.” (1 Starkie by Wendell, pp. 418, 431.) As its sole office is explanation, it cannot introduce new matter, or enlarge, in any degree, the sense of the words to which it relates. If it enlarge the sense materially, which can only happen when the sense which it attributes to the words is that which alone renders them actionable, the proper course of the defendant is to demur, and if the court be of opinion that the inuendo is not justified by the antecedent facts to which it refers, and that rejecting it, the words are not actionable, it is certain that judgment will be rendered in his favor. But it is evident, that if the inuendo could be properly construed, as tendering an issue of facts, it would be the duty of the court; instead of rendering judgment for the defendant, to overrule his demurrer, and compel him to plead. Where the words, although their sense may be enlarged by the inuendo, are plainly actionable, upon their face, a denial of the truth of the inuendo would be frivolous and nugatory. As rejecting the inuendo, the cause of action would remain, the denial would be immaterial, as an issue of fact, and groundless, as an issue of law. And the same observations apply, when the explanation of the inuendo corresponds entirely with the unambiguous meaning of the words, or is a plain and necessary deduction from the facts previously averred. In brief, the question which an inuendo raises, is, in all cases, á question not of fact, but of logic. It is, simply, whether the explanation given is a legitimate conclusion from the premises stated ; and to determine this question, must be, in all cases, the exclusive province of the court. Mr. Starkie has very correctly defined an inuendo^ as “ an ex-
Hitherto we have cited no authorities in support of these posi *66 tions, nor do we deem it necessary to refer to any, except the learned treatise of Mr. Starkie (1 Starkie, pp. 418, 432), in which the English cases are collected and explained, and the judgment of our own Supreme Court, in the early and leading case of Van Vechten v. Hopkins, 5 John. 211. The opinion, in this case, of Mr. Justice Van Ness, with whom the majority of his brethren concurred, bears the impress of his clear and vigorous intellect, and is a signal proof of the skill and ability with which he could apply his powers in the conduct of a legal disquisition. The several offices of a prefatory averment, of the colloquium, and of the inuendo, are distinguished and defined with admirable precision and perfect accuracy, and the conclusion at which he arrives, that “ from the nature and use of an inuendo, it is clear that it cannot be the subject of proof by witnesses,” (p. 226,) which we are not aware has in any subsequent case been impeached or questioned, we think must be regarded, in the courts of this state, as settled law.
In closing this branch of the discussion, it seems expedient to notice an important change in the rules of pleading in actions for libel or slander, which has been introduced by the code. Formerly, in all cases in which the application of the words published or spoken was uncertain, or their meaning ambiguous, and their application to the plaintiff, or their meaning as libellous or slanderous, could only be determined by a reference to extrinsic facts, an averment in the declaration of the existence of these facts was indispensable ; and it was in these cases only, that strictly speaking, an inuendo was necessary.
But the code provides that, hereafter, “ it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the words which are set forth as the cause of action, but it shall be sufficient to-state generally, that they were published or spoken of and concerning the plaintiff.” (Code, Sec. 164.) We have reason to know that this provision is construed by many as superseding the necessity of stating extrinsic facts, in all cases whatever, but, in reality, it is carefully and very properly limited to the cases in which proof of extrinsic facts is necessary to fix the application of the words, not to determine their meaning. Hence, where the meaning of the words is so ambiguous that extrinsic *67 facts are necessary to be proved, to show them to be actionable at all, the necessity of stating these facts by an explicit averment is precisely the same as it has always been. As these facts must be proved to enable the plaintiff to maintain his suit, they are material and issuable in their nature, and a change in the rules of pleading that would have released the plaintiff from the obligation of stating them in the complaint, and thus have taken from the defendant the opportunity of controverting them in his answer, would have been highly inexpedient. Whether the change that has been made, limited as it is, was entirely judicious, may be seriously doubted.
III. Having arrived at the conclusion, that the answer in this case has failed to make an issue upon any material allegation in the complaint, we are next to inquire, whether it has set up a valid defence.
In order that our observations upon this question may be clearly understood, it will be necessary to recite those passages-in the answer, in which the defences of “ truth and privilege,” it is alleged, are contained. They form the concluding paragraphs in the first answer, and are repeated, with slight variations of expression, but with no change of .meaning, in each that follows r
“ And this defendant further says, that all the facts stated in said publication were and are true, as this defendant has been informed and believes, and all the opinions, .deductions, and! inferences therein stated, were fair, reasonable, legitimate, and legal deductions from such facts and circumstances, and that the grounds thereof were fairly made known to, and placed before the public, in connection therewith, and that said publication was lawful and privileged, as this defendant has also been informed and advised, and as he believes.”
Our first observation upon these passages is, that they are so-expressed as to render it difficult, if not impossible, to say whether truth and privilege were meant to be alleged, as separate defences, or the defence meant to be relied on was not that of privilege alone. It is doubtful whether the defendant intended; to say, that the facts being true, and the inferences therefrom fair and reasonable, the publication was therefore privileged; or that the facts were true, and also that, without reference to the truth or falsehood of the facts, the publication was privi *68 leged ■; and this uncertainty was held by the judge, from whose decision this appeal was taken, to be alone .a fatal objection to the answer. Certainly, the code requires (Sec. 150,) that separate defences shall be separately stated, and the opinion of the judge at special term, that the blending together, in one statement, two defences, which in themselves are distinct and independent, is not an objection of form, but renders the answer, under the code, insufficient in law, seems to be fully sustained by .that of the Supreme Court, in Boyce v. Brown, (7 Barb. S. C. Rep. 80.) We deem it unnecessary, however, to express any opinion as a court, upon the question whether an uncertainty, which results solely from an ambiguous form of expression, and which might have been removed by a proper motion at' chambers, is alone a valid ground of demurrer, but shall adopt, for the purposes of this opinion, that construction of the answer upon which the -counsel for the defendant have insisted, namely, that the defences of truth and' privilege are separate in themselves, and are separately stated.
The allegation, that “ the facts were and are true, as this defendant -has been informed and believes,” was construed by the judge below, as affirming only the information and belief of the party, not the truth of the facts; but although such is the obvious and -natural interpretation of the words, we think, that in pleadings under the code, they may reasonably be construed as an averment, upon information and belief, of the existence of the facts ; and such is the construction that will hereafter be given to them, in all cases, in which the existence of the facts thus referred to is necessary to be proved to constitute a defence.
The sole question, therefore, in relation to the validity of this defence as pleaded, is, whether a general averment of the truth" of the facts is a sufficient justification of the libel, which it certainly is not, if we are to be governed by the rules of pleading that were in force previously to the adoption of the code.
The code, in abolishing a division of actions, that was, in a measure, arbitrary, and all forms of pleading inconsistent with its own provisions, has been careful not to abolish those rules of a sound logic, by which the sufficiency of pleadings is to be . *69 determined. (Code, Sec. 140.) Rules which were purely technical, and had a reference solely to the particular form of the action in which they were applied, are doubtless abolished ; but those which, having their foundation in reason and good sense, lend an important aid in the investigation of truth, and manifestly tend to the furtherance of justice, retain all their original force and authority ; and of these, none was more clearly established than that which declares that, when a defamatory charge is made in general terms, it can only be justified by a specification of the facts upon which the defendant relies to establish its truth. Where, for example, the charge is, that the plaintiff is a swindler or thief, a defendant who justifies, must set forth, with all requisite certainty of time, place, and persons, the particular acts of fraud or felony 'which he intends to give in evidence in support of his accusation, and a mere repetition of the charge, or a simple averment of its truth, as constituting no defence, would entitle the plaintiff to judgment. The law is not so unreasonable as to expect that the plaintiff, in such a. case, shall proceed to a trial prepared to explain and vindicate every action of his life ; yet this he must be, unless the defendant shall be required to specify the acts which, in support of his defence, he intends to impeach. Nor, in requiring this, does the law impose any hardship upon the defendant. If, when the libel was published or slander uttered, he had no knowledge or information of any facts that could be given in evidence to establish its truth, he is without excuse, and is justly liable to the penalty of dariiages; and if he possesses the knowledge or information, there can be no difficulty in his stating the facts, which he believes to be true and expects to prove. (J. Anson v. Stuart, 1 T. R. 748 ; Lane v. Howman, Price, 76 ; Morris v. Langdale, 2 B. & P. 284 ; Holmes v. Catesby, 1 Taunt. 343 ; Van Ness v. Hamilton, 19 John. 368.)
It is evident, from these observations, that the rule in question cannot be regarded as technical and formal. On the contrary, as its object is to secure a fair trial between the parties, by preventing the injustice that may result from surprise, and such is its manifest tendency, the protection which it affords to a plaintiff is not only reasonable, but necessary. It is one of those rules for “determining the sufficiency of a pleading,”' *70 which the framers of the code, so far from meaning to abolish, were solicitous to preserve ; and we are clearly of opinion that it is the duty of judges to apply it, as hitherto it has been applied, to every case where the imputations upon the character of the plaintiff are conveyed in general terms, which, if true, may be shown to be so by evidence of the particular facts which, by implication, they assert. The libels set forth in this complaint are, as it seems to us, without an exception, of this character, and that they are so, was very faintly denied upon the argument.
The libel which is the immediate subject of consideration alleges, in substance, that it was a part of the system of the plaintiff, as manager of the Italian Opera, to employ his critics in attacking, in corrupt and purchased newspapers, the females of his company, and the answer is, in our judgment, insufficient, in not stating the names of the critics thus employed, of the females attacked, and of the corrupted newspapers in which the attacks were published, the substance of the articles thus published, and the time and place of their publication. All these circumstances ought to have been known to the defendant before he published the libel, and if they were not he took upon himself the risk, and must bear the consequences, of its publication.
It has, however, been insisted that this objection to an answer, that the defence of truth is not set forth with all the particularity and certainty which the law requires, can no longer be raised by a demurrer. The insufficiency of an answer, which is now the only ground of a demurrer, it is asserted must be construed to mean the entire insufficiency, in law, of the defence which it alleges, and cannot therefore be said to exist, when it is only the form of pleading a defence, and not its substance, that is erroneous or defective. That such, however, is not the true and reasonable construction of the code, we think may be rendered evident by a very brief examination of some of its provisions. The rules for “ determining the sufficiency of pleadings ” to which the code refers, and which, except as modified, it has been frequently and very properly decided, that 'it retains, are manifestly rules of pleading, and not of law. (Code, sec. 140 ; Hill v. Thatcher, 3 How. 497 ; Knowles v. *71 Gee, 4 How. 319; Rochester City Bank v. Suydam, 5 How. 216 ; Williams v. Hayes, id. 472 ; Boyce v. Brown, 7 Barb. 80.) The authors of the code would have transcended their powers, had they attempted to alter the rules of law which determine the validity of a cause of action or of a defence—and, in truth, no such attempt has been made. Their labors have been strictly confined to procedure and pleading ; and, as the only rules “ for determining the sufficiency of pleadings ” which they have modified, are rules of pleading, (Code, secs. 161, 162, 163,) it necessarily follows, that it is to these alone, that section 140 must be construed to refer. Hence, when by the application of these rules, an answer is found to be insufficient, we cannot doubt that its insufficiency may be declared upon a demurrer; and this must be so, unless we suppose that “ insufficiency ” in the section which gives the demurrer, (sec. 153,) has a different meaning from that which it manifestly bears in the section which prescribes the rules by which the fact of insufficiency is to be ascertained—a supposition which we regard as gratuitous and unreasonable. The words of the section authorizing a demurrer for insufficiency, in requiring the grounds of the demurrer to be stated, lead to the same conclusion that the term “ insufficiency” is used in its broadest legal sense ; since, if there are no other grounds for demurrer than that the answer contains no denial of the cause of action, and sets up no defence valid in law, we can perceive no reason why any other than a general demurrer, averring that the answer is not sufficient in law to bar a recovery, should be required or allowed. We must, therefore, adhere to the opinion, that an answer is to be deemed insufficient in the sense of the code, not only where it sets up a defence which is groundless in law, but when in the mode of stating a defence, otherwise valid, it violates those primary and essential rules of pleading, which the code has studiously retained.
IV. As from the defective mode in which it is pleaded, the defence of the truth of the libels cannot be sustained, we shall proceed to consider whether their publication can be justified, or more properly excused, on the ground of privilege.
We understand the learned counsel for the defendant to contend that the question of privilege is, in all cases, a question of *72 fact, which it belongs to a jury alone to determine, and if this be so, it is a necessary consequence, that a demurrer, which seeks to withdraw this question from the consideration of a jury, must be overruled. But, although in some cases, the claim of privilege is a mixed question of law and fact, that it is in all a question which it is the exclusive province of the jury to decide, is a position that we cannot hesitate to reject. It has no real support from any adjudged case—it attributes a dangerous power to the jury—it robs the court of its appropriate functions, and, in our judgment, if admitted to be true, would subvert the whole law of libel, as it has hitherto been understood and administered. It could no longer be said with truth, that private reputation is at all under the protection of the law, should it be held, that in every case in which the defence of privilege is raised—and it may be raised in all—it is in the power of the jury, in the exercise of an arbitrary discretion, to grant or withhold the protection that is sought. We say, advisedly, “ in the exercise of an arbitrary discretion,” for such is the discretion which is not restrained or limited by rules of positive law, and, if the law has not defined the cases in which the claim of privilege may be justly admitted, the discretion of a jury in allowing or rejecting a claim, is plainly unlimited and absolute. Such, however, is, assuredly, not the actual state of the law. On the contrary, the law has most carefully defined and distinguished the several classes of cases, in which alone a publication, libellous on its face, maybe excused as privileged—(Starkie on Slander ; Cook v. Hill, 3 Sand. S. C. R. p. 341)—and whether the case of a defendant, who in his answer sets up this defence, upon his own statement of the facts, can be properly referred .to any one of these classes, is a question, -which a demurrer to his answer of necessity raises, and which, when it is thus raised, the court is bound to determine.
It is this question, therefore, in its application to the present case, that we shall now examine.
The defendant, as the editor of a public journal, if not actuated by private malice, had an undoubted right to criticise and condemn the acts and conduct of the plaintiff, as manager of the Italian Opera, and if the plaintiff were, in fact, guilty of the various acts, which the successive publications of the defendant *73 impute to him, the animadversions upon his conduct which those publications contain, are fully warranted, and the inference that he was unworthy of public confidence and support, was, in the language of the answer, a “just and legitimate deduction.” But to render the critical animadversions of the defendant justifiable, or pardonable, the truth of the facts, upon which they were founded, must be established or admitted; for, although the criticism may be just, upon the supposition that the facts are true, yet, if they are false, the imputations which they convey, upon the character and motives of the plaintiff, may be an aggravated libel, fully entitling him to the damages which he claims.
When an irreligious, immoral, or licentious book is published, the editor who denounces its pernicious tendency, with such reflections upon the character and motives of the writer as the examination of the book fairly suggests, so far from deserving to be treated as a libeller, is entitled to the thanks and gratitude of the public. But if the work is published anonymously, and the editor, without evidence, imputes it to a person, say, a clergyman, of unblemished character, although the criticism upon the book itself may be perfectly just, none can doubt, that the false imputation of its authorship is a malignant libel, demanding from a jury the infliction of exemplary damages.
Observations precisely similar apply to the present case. If the plaintiff had been in the habit of bribing newspaper editors and critics to defame the females of his company, and if, in a former season, he had cheated the subscribers to the opera (which, if not directly asserted, is not obscurely intimated, in a subsequent libel), the defendant may well be excused for inferring and predicting, that, in the season then commenced, he would pursue a similar course of baseness and dishonesty. But if the truth of the facts thus charged upon the plaintiff is not so alleged, that it can be given in evidence upon the trial, the publications in which they are contained, facts and comments, inferences and deductions, as well as statements, must of necessity be treated as malicious and serious libels, for which the defendant must answer in such damages, remunerative or penal, as a jury may deem to be adequate. In this, and in all cases, in which a publication, libellous in its tendency, is sought to be excused as a just, and, therefore, privileged criticism, the *74 defences of truth and privilege are inseparably connected, and as, in the present case, that of truth, we have shown, cannot be admitted, we have no alternative but to say, that of privilege must be equally rejected. The libels, which are the subject of complaint, do not consist in deductions and inferences from acknowledged facts, but in the assertion of facts, and the imputation of designs and motives which, unless the defendant, under corrected pleadings, shall prove to be true, he cannot be justified, or excused for publishing.
Our conclusions are, that as the answers to the several libels contain no denial of any material allegation in the complaint, and set up no valid defence, the plaintiff must be. entitled to judgment, upon the demurrers, unless the demurrers themselves are essentially vicious, or the complaint radically defective.
There are only two of the objections that have been taken to the demurrers that we deem it, at all, necessary to notice, and these are not easy to be reconciled. In truth, they seem to involve a plain contradiction, since the first is, in effect, that the demurrers are too broad, and the second, that they are too narrow. Still, as one, though not both, of these objections may be well founded, both must be considered.
The demurrer to the first answer, and the remark is applied to each that follows, is said to be too broad, as embracing, not only those parts of the answer to which our past observations have referred, but also those, which allege facts and circumstances, which, although not amounting to a full defence, may properly be given in evidence, in mitigation of damages. The argument, however, that the demurrer is, for this reason, too extensive, we think is founded upon a very erroneous interpretation of the code. It is true, that section 165 permits matter in mitigation of damages to be set forth in the answer, but this is only allowed when the truth of the defamatory matter is properly averred ; and as we have decided that in the present case the truth has not been sufficiently pleaded, it follows that the allegation of mitigating circumstances must also be rejected, and it is, therefore, properly comprehended in the demurrer. Nor is this all; we are clearly of opinion that when circumstances, which can only be given in evidence in mitigation of damages, are set forth in the answer, it must be distinctly stated *75 that it is- with that view, and for that purpose only, that they are introduced, since otherwise the plaintiff will have a right to infer that they are relied on as a bar to the action, and upon that ground may properly demur to them. This necessary distinction between matter in mitigation, and matter in bar, is not made in any one of the answers.
The demurrer is said to be too narrow, as not embracing those parts of the answer which contain a denial of the matters of inducement set forth in the complaint. The reply is, that as the matters of inducement, thus averred in the complaint, constitute no part of the cause of action, it was not necessary to traverse them, in the answer. The issues thus formed must be regarded as immaterial, since the judgment to be finally rendered cannot depend upon their determination. If the answer had contained nothing more than a denial of the matter of inducement, it is clear that the plaintiff would have had an immediate right to demand a judgment, and the effect must be the same if the answer shall be reduced to that state by the allowance of the demurrers. The demurrers embrace all those portions of the answer which profess to contain, or can bo construed, as intended to contain, any defence to thé action, and consequently, those portions which, as they contain no defence, create no obstacle to the judgment which the plaintiff asks, although, perhaps, they might have been included, are, with entire safety, omitted.
The objections to the complaint will be disposed of in a few words.
We do not at all doubt that, upon the argument of a demurrer, the defendant may attack the complaint, but the grounds of the attack, to render it successful, must be such as would have entitled the defendant to judgment, had he elected to demur, instead of answering. The first objection in this case, that the complaint does not state facts sufficient to constitute a cause of action, is of this character, and would, indeed, be conclusive, if well founded, but as we are of opinion that each of the publications set forth in the complaint, is a libel upon its face, and that it is sufficiently averred that each was published of and concerning the plaintiff, the objection must be dismissed, as untenable and groundless.
*76 The other objections which, although stated in the printed points, were very faintly pressed upon the argument, are founded upon averments in the complaint, which may be justly regarded as redundant and immaterial, since they may all be struck out without affecting the causes of action, which are sufficiently stated, and upon which alone the plaintiff can be entitled to recover. As, upon a demurrer to the complaint, we could not have hesitated to give judgment for the plaintiff, all the objections now taken must be over-ruled.
Hitherto we have taken no notice of the thirteenth demurrer, and we regret that we are under the necessity of adverting to it at all. This demurrer is to the concluding portion of the answer, which purports to be a defence, not to a single libel, but to the entire action, but it is a defence which we cannot believe any counsel has seriously advised. It was doubtless intended as a jest, and was meant to operate, as such, upon the minds of the jury upon the trial; but although it might be excused, if uttered by counsel in addressing the jury, we are forced to say that it ought never to have found a place in a pleading, which forms a part of the records of the court, and that, upon a proper application, it must have been expunged for impertinence. This pretended defence is, in substance, that the plaintiff, so far from having sustained any injury, was, in fact, greatly benefited by the publication of the series of libels, of which he unreasonably complains, and that the defendant, so far from being liable in damages, is entitled, as author, and publisher of the libels, to a compensation for his work and labor, his valuable and meritorious services, and he actually prays that an account may be taken of damages and profits, and a balance be found and certified in his favor. The appropriate and necessary reply is suggested by the observations of Lord Den-man, in the recent case of Baylis v. Lawrence, 11 Ad. and Ell., 924.
It is, that although blame, from some quarters, is more valuable than praise, it is a mistake to suppose that those to whom the remark applies have acquired a right to libel others with impunity. The damages which, in such cases, are not required as compensatory, may yet be imposed, and justly imposed, as exemplary and vindictive.
The plaintiff is entitled to judgment upon all the demurrers, *77 but the usual liberty is given to the defendant to amend his answer upon the payment of costs.

 Tide the able opinion of Mr. Justice Harris, in Williams v. Hayes, 5 How P. Rep. 492. The views of this learned judge exactly correspond with the observations in the text.