HENRY WOODHOUSE, Appellant, v. NEW YORK EVENING POST, INC., and Others, Respondents.

First Department, November 28, 1924

**Libel and slander — action for libel based on newspaper story — article stated that members of club wanted explanation of fund in possession of committee of which plaintiff, alleged convict, was member — article stated that story of fund was story of plaintiff's life and then described plaintiff's life — article is susceptible of meaning that since plaintiff had committed crime earlier in life, crime was committed in management of fund — article is libelous per se — complaint is sufficient.**

An article published in a newspaper in reference to the management of a fund by a committee of which the plaintiff was a member is libelous *per se*, which states that the members of a club that appointed this committee demanded an explanation of the fund; that the committee having the fund in charge was dominated by a man who served a jail term, referring to the plaintiff, and which indirectly charges illegal mismanagement of the fund, and reiterates from time to time, in such manner as to color the charges of mismanagement and diversion of the funds, the fact that the plaintiff is an ex-convict, and which states that the story of the fund is in a large part the story of the plaintiff,

a man who served time in prison, giving the alleged details of the crime of which the plaintiff was actually convicted.

The article is susceptible of meaning that as the story of the life of plaintiff contained a crime of which the plaintiff was convicted, so the story of the fund contains a crime.

The complaint is sufficient which, together with the bill of particulars, alleges that, outside the fact that the plaintiff had served a term in prison, the allegations of the article are false.

APPEAL by the plaintiff, Henry Woodhouse, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of December, 1923, granting the defendants' motion to dismiss the third amended complaint and for judgment on the pleadings pursuant to rule 112 of the Rules of Civil Practice.

*Nugent & Nugent* [*Daniel F. Nugent* of counsel], for the appellant.

*White & Case* [*David Paine* of counsel], for the respondents.

FINCH, J.:

The action is in libel. The defendant published of and concerning the plaintiff an article headed as follows:

" Subscribers Seek Explanation of Aero. Club Fund — Court Action Threatened over Disposition of $378,381. Special Committee Which Handled Fund Dominated by Man Who Served Jail Term."

Following is a long article concerning the National Aeroplane Fund alleged to be a fund of $378,381.17 collected directly and indirectly by the Aero Club of America for the purpose of training aviators, providing an aviation corps for every State in the Union and putting machines n use for carrying the mails. The tenor of this article is such as to be susceptible of conveying the meaning that there has been gross maladministration of this fund and conversion of a large portion thereof. It is alleged that these funds did not go through the club treasury, but were handled by a special committee " dominated by Henry Woodhouse (this plaintiff meaning) who has se ved a term in Clinton Prison at Dannemora, New York. Woodhouse who is now a member of the board of governors of the club, served his term under the name of Caselegno, and has also been known by the alias of Whitehouse." From time to time throughout the article the statement that plaintiff is an ex-convict is reiterated in such a manner as to color and accentuate the indirect charges of mismanagement and diversion of the funds collected for a patriotic purpose, of which interpretation the article is susceptible. The article then proceeds as follows: " The story of the fund is in large part the story of the life of Henry Woodhouse, the man who served his time

in Clinton. Many subscribers to the fund and members of the club were unaware of his record when he dominated the committee which had charge of the expenditures. His career has been a checkered one, and he has risen from assistant cook in a hotel, the position he held when convicted of manslaughter, to a member of the board of governors of what was once a leading club.''

Then follow the alleged details of the crime of manslaughter. It is further alleged that he then escaped from the hotel and was caught at the railroad station and brought back for trial and convicted on said charge and sentenced to prison at hard labor.

The article is susceptible of the meaning that as the story of the life of the plaintiff contained a crime of which the plaintiff was convicted, so the story of the fund contains a crime.

It is alleged in the complaint and bills of particulars, which for the purpose of the motion must be taken as true, that outside of the fact that plaintiff had served a term in jail, the other allegations of the article are false, namely, among others, that: '' subscribers sought explanation of Aero Club Fund and that Court action was threatened over disposition of $378,381; that contributors to the National Aeroplane Fund demanded an explanation in detail of the $378,381.17 collected directly and indirectly or otherwise by the Aero Club of America for the purpose of training aviators, etc.; that of this sum $147,314.92 in cash was disbursed under the direction of a special committee whose report on expenditures did not meet with the approval of many members of the Club; that a thorough house cleaning was in the opinion of 'eading members of the organization, the only means for setting at rest rumors which had been in circulation for some time regarding the Club's financial affairs; * * * that a very large proportion of the money collected, approximately one-half was used in the expenses of collection; * * * that the funds were handled by a special committee dominated by Henry Woodhouse; that plaintiff had ever used an assumed name; that plaintiff had also been known by the alias of Whitehouse; * * * that his (plaintiff's) career had been a checkered one; that he had risen from assistant cook in a hotel, the position he held when convicted of manslaughter to a member of the board of governors of what was once a leading club; that plaintiff said he was born in Turin, Italy, on either June 20th, 1881, or 1884, under the name of Mario Terenzio Enrico Caselegno; that persons had examined the city records of Turin; and that they failed to find any mention of his birth.''

The publication clearly is libelous *per se*, within the rule stated by Judge CRANE in *Bennet* v. *Commercial Advertiser Assn.* (230 N. Y. 125, 127), as follows: '' The libel law has never been confined

to charges of illegality or law-breaking. Any false accusation which dishonors or discredits a man in the estimate of the public or his friends and acquaintances or has a reasonable tendency so to do is libelous: In *Triggs* v. *Sun Printing & Pub. Assn.* (179 N. Y. 144) a libel was stated to be a written or printed statement or article published of or concerning another which is false and tends to injure his reputation and thereby expose him to public hatred, contempt, scorn, obloquy and shame."

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., SMITH, MERRELL and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.