DAVID TAYLOR, Appellant, *v.* LOUIS A. FRIEDMAN, Respondent.

First Department, October 30, 1925.

**Libel and slander — defense of qualified privilege — certain statements written by defendant in reference to plaintiff held to be libelous per se — evidence — hearsay evidence — error to admit evidence in mitigation of damages in absence of plea — words may be libelous per se though not charging crime — actual malice — error to reject testimony as to statements made by defendant at time summons was served showing ill-will — proof of actual malice permissible where qualified privilege is pleaded or for purpose of proving punitive damages.**

It was libelous *per se* for the defendant to write that the plaintiff was the " biggest crook out of jail," was " impossible from any moral point of view," that he never met a man who was so " absolutely, intentionally dishonest " as plaintiff, that plaintiff was " a liar and grafter," that he was a " skunk " and that " he is so absolutely and positively dishonest that life is too short to fool with him," and that plaintiff was a " blackmailer."

It was error to admit evidence as to a report made to the defendant by some unnamed agent of the result of a certain creditors' meeting, which the defendant did not attend, for that evidence is purely hearsay.

Evidence in mitigation of damages is inadmissible, in the absence of a plea by the defendant in mitigation.

Written matter may be libelous *per se* although it does not charge the plaintiff with the commission of a crime, for the rule is that matters are libelous *per se* which tend to expose the plaintiff to public hatred, contempt, scorn, obloquy or shame.

It was error for the court to refuse to admit testimony by a process server who served a summons in this action as to certain statements made by the defendant to him at the time of service which tended to show defendant's ill-will. This testimony was admissible for the purpose of showing actual malice, since the defendant pleaded qualified privilege, and it was admissible also for the purpose of establishing the right to punitive damages.

APPEAL by the plaintiff, David Taylor, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of December, 1924, upon the verdict of a jury.

*Jackson, Fuller, Nash & Brophy* [*John G. Jackson* of counsel; *Charles B. Brophy* with him on the brief], for the appellant.

*Davis, Wagner, Heater & Holton* [*Charles R. Coulter* of counsel; *Arnold L. Davis* and *Robert D. O'Callaghan* with him on the brief], for the respondent.

MCAVOY, J.:

Five libelous publications are the basis of plaintiff's suit. The alleged defamatory communications were written and sent by the defendant to one Hilands. The first cause of action is based on language contained in a telegram in which the defendant characterized the plaintiff as being the " biggest crook out of jail." The second cause of action arises out of a letter in which the defendant speaks of the plaintiff as " impossible from any moral point of view," and states that he had never met a man who was so " absolutely, intentionally dishonest " as the plaintiff. The third cause of action is based on a letter which refers to the plaintiff as " a liar and grafter," and further states that the defendant would have nothing to do with a certain contemplated deal if the plaintiff were connected with it, in this language: " as we have too nice and good a proposition to pollute it by connecting with it, a skunk like Taylor (and I refer to him as a skunk with due apologies to the whole Damn Skunk Family)." The fourth cause of action is based on a letter containing this charge of and concerning the plaintiff: " He is so absolutely and positively dishonest that life is too short to fool with him." The fifth cause of action has for its foundation a statement contained in a telegram which refers to the plaintiff as a blackmailer.

The defendant by his answer admitted writing and sending the several communications in question or communications " containing language substantially in accordance " therewith on or about the dates specified, to one W. J. Hilands, in the city and county of New York, but denied the other material allegations of the complaint. The defendant then set up an alleged defense by way of alleged qualified privilege to each and every alleged cause of action in the complaint. The answer contained no other affirmative defense either complete or partial.

On motion to dismiss the complaint as to each cause, the ruling was that the motions as to the first and fifth causes of action be denied, and the motions as to the others granted on the ground that

the publications complained of therein were not libelous *per se*. We reach a different conclusion and hold that this ruling was erroneous as these publications all impute discreditable characteristics to plaintiff and obviously tended toward holding him up to disgrace and obloquy. The language alone justifies this holding without argumentation in support thereof. Further, we think that it was improper to permit evidence as to a report made to defendant by some unnamed agent of the result of a certain creditors' meeting in San Francisco which defendant did not attend. The defendant testified that this report was made in writing and referred to the proceedings at the meeting and " suggestions and propositions that were made by Mr. Taylor." This testimony was the merest hearsay.

It was offered to show coercive methods on the part of the plaintiff. Since the answer contained no affirmative defense by way of mitigation of damages, it had no place in the proof of defendant's case.

It would appear from the colloquy in the trial court that the second, third and fourth causes of action were dismissed because of the contention of defendant's counsel that language to be libelous *per se* must impute a crime. Referring to the language complained of in the second cause of action, defendant's counsel said: " Those words are not libelous *per se* because they do not impute a crime." After counsel so contended, the court granted the several motions to dismiss the second, third and fourth causes of action. When similar motions as to the first and fifth causes of action were denied, the court said: " The words in the first cause of action are not only ' crook ' but ' the biggest crook out of jail ' and in the fifth cause of action the language clearly imputes crime, blackmail." " The libel law has never been confined to charges of illegality or lawbreaking." (*Bennet* v. *Commercial Advertiser Assn.*, 230 N. Y. 125; *Woodhouse* v. *New York Evening Post, Inc.*, 211 App. Div. 75.) The rule announced in *Bennet* v. *Commercial Advertiser Assn.* (*supra*, 127) is: "Any false accusation which dishonors or discredits a man in the estimate of the public or his friends and acquaintances or has a reasonable tendency so to do is libelous. In *Triggs* v. *Sun Printing & Pub. Assn.* (179 N. Y. 144) a libel was stated to be a written or printed statement or article published of or concerning another which is false and tends to injure his reputation and thereby expose him to public hatred, contempt, scorn, obloquy or shame."

Our view is that the words complained of in the causes dismissed do expose plaintiff to such treatment by their very utterance. We think too that the court should have admitted the evidence of the

witness Carson, who was called with reference to certain alleged malicious statements made to him by the defendant when the summons in this action was served. The testimony was offered as proof of express malice. Defendant's counsel objected on the ground that evidence of express malice must be confined to the time of publication of the matter complained of. The court at first ruled that the conversation would be allowed in evidence. Later, however, the witness having stated that he did not remember the exact words without refreshing his recollection by referring to a memorandum made by him at the time, defendant's objection to the evidence was sustained. The court then ruled that " it would [not] be fair to even receive in evidence expressions of resentment or otherwise, made by a man sued in a law suit to an operative or process server, as bearing on any malice growing out of an alleged libel occurring so many months before."

The defense pleaded here was that of qualified privilege; accordingly the burden was upon the plaintiff to establish actual malice in order to recover. This the court correctly stated to the jury in its charge. Evidence of such actual malice was also competent to allow recovery of punitive damages. The defendant's ill will toward the plaintiff, as shown by his remarks some four or five months after the date of publication of the libel, is not too remote in time to be received upon such issues. The rule in *Turton* v. *N. Y. Recorder Co.* (144 N. Y. 144, 150) gives ground for this conclusion: " No case holds that a repetition of a libel or slander after suit brought is in its nature not competent evidence on the question of malice and damage, and whenever it has been excluded as evidence it has always been upon the ground that it was an independent cause of action, and thus, if such evidence were received, that there would be danger of a double recovery.   *   *   *   If the plaintiff can give in evidence language published or uttered subsequently to the commencement of the action for the purpose of aggravating damages, it seems quite reasonable that the defendant ought to be permitted to give in evidence a fair and honest retraction of the charges promptly made subsequently to the commencement of the action in mitigation of damages."

Evidence of the defendant's ill will toward the plaintiff would be relevant and should be received on the question of actual malice either as a necessary part of plaintiff's case when a defense of privilege is interposed, or as a basis for punitive damages irrespective of when such ill will was manifested.

The ground of objection to Carson's testimony that it would amount to " an additional cause of action " is not tenable. We held in *Collier* v. *Postum Cereal Co., Ltd.* (150 App. Div. 169, 177):

"* * * The fair rule, and the one to be adduced from the cases, is that evidence of publications which might be the subject of other actions should not be received for the sole purpose of enhancing damages. In cases in which the law implies malice the plaintiff does not need to prove actual malice as he will recover his compensatory damages without such proof, and, if he be allowed to give evidence of a publication which might be the subject of another suit, for the sole purpose of recovering punitive damages, the practical result will be a double recovery. However, if it be necessary to prove actual malice, *e. g.*, to rebut a claim of privilege, any evidence legitimately bearing on that question ought to be received even though it might be the subject of another action."

The errors complained of require that the judgment be reversed and a new trial ordered, with costs to the appellant to abide the event.

Clarke, P. J., Dowling, Merrell and Martin, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.