JOHN J. SMITH, Plaintiff, *v.* STATEN ISLAND ADVANCE CO., INC., Defendant.

Supreme Court, Special Term, Richmond County, February 23, 1949.

*Smith & Kane* for defendant.

*Thomas P. Mesick* for plaintiff.

F. E. JOHNSON, J.   The complaint which the defendant moves to dismiss alleges that the publication was headed: " Both skippers are fined in ferry mishap " and that the article itself reads in part: " Both Captains were found at fault and fined as the result of a Coast Guard investigation into the crash of the ferry Knickerbocker and a Liberty Ship   *   *   *   as a result both Captain John J. Zito   *   *   *   and Captain J. J. Smith (plaintiff)   *   *   *   were found to have violated the rules of the road and fined $50 each.   The collision occurred in the afternoon just after the ferryboat had pulled away from its slip at South Ferry.   The (plaintiff's) Liberty Ship plowed into the Knickerbocker denting in the side   *   *   *   scores of persons were thrown to the decks and 6 required medical attention   *   *   *."

The decision made on a previous motion that this language is not libelous per se seems sound; it does not on its face hold

the plaintiff up to obloquy, scorn, ridicule, hatred or contempt (*Taylor* v. *Friedman,* 214 App. Div. 198).

It is a charge of but one act of negligence (*Church* v. *Tribune Assn.,* 135 App. Div. 30); even general negligence has been held nonlibelous (*Walker* v. *Best,* 107 App. Div. 304; see Seelman on Libel and Slander, § 70, pp. 83–84.)

The amended complaint has an innuendo which is the cause of this motion. The plaintiff, although claiming that the article is libelous per se, may, as a precaution, allege an innuendo which might make it so. The language of that addition is: " that by said article the defendant meant and intended to mean that the plaintiff was incompetent and incapable in his profession and not qualified to be a master mariner in the United States merchant marine by reason of his alleged violation of the statutes of the United States governing the rules of the nautical road and establishing standards for the safety of lives and property at sea, and the said publication was so understood by the readers of the said newspaper and the public generally and that such was the intent, purpose and effect of the defendant in publishing the said libelous article.''

When an innuendo is pleaded to make libelous that which may not be libelous per se, it is impossible to achieve that result by doing violence to the natural meaning of the words of the article (*Kingsbury* v. *Bradstreet Co.,* 116 N. Y. 211; *Morrison* v. *Smith,* 177 N. Y. 366).

These words must be read in their plain and obvious meaning, their plain and popular sense, their ordinary meaning, their most natural sense (citations in Seelman on Law of Libel and Slander, p. 137). The innuendo cannot be used to change their meaning, or give a significance that they do not have, or substitute an interpretation they will not bear.

Wherein the plaintiff was " found at fault " is not specified; it might be in a matter not at all reflecting upon him, but because of the guilt of a subordinate, for whose conduct the plaintiff captain was merely responsible. If the article can be read to mean that it was the *plaintiff's own personal failure* that he " violated the rules of the road " there is nothing innately bad in that act, nor is it stated how or why the violation occurred so as to attach to the plaintiff odium that would merit his being the object of scorn, ridicule, hatred or contempt.

The innuendo is not a fair translation of the article, but gives to its words a meaning they do not reasonably carry. For one to be said to be at fault, in that he has violated the rules of the

road, without any explanation of how or why it happened, does not fairly imply that he was then incompetent, incapable, and not qualified to be the captain of that ship, under the foregoing authorities.

Since the libel must be there before the innuendo can make it visible, it is apparent that the innuendo cannot import the libel into the publication, but at the most can point it out and expose it by translation. The libel must not be looked for in the language of the innuendo, but only, through its aid, in the language of the publication. Innuendo is a searchlight that *fairly* illuminates the meaning of the article, but the libel is not in the searchlight, and must be found, if at all, in the words of the article as thus illuminated. The test seems to be whether the innuendo contains an *explanation* of the article which " is a legitimate conclusion " from the language of the article (*Fry* v. *Bennett*, 5 Sandf. 54, 65) and an innuendo is futile if it seeks to improperly enlarge the *meaning* of the words complained of (*Morrison* v. *Smith, supra*, p. 369).

It must, therefore, be found that the article is not, per se, libelous, and no reasonable translation or paraphrase of it discloses a libel and the language is inherently incapable of being translated, recast, interpreted or reasonably construed into a libel by an innuendo. Motion granted.