# NEW-YORK COMMON PLEAS.

## EGBERT L. VIELE agt. JOHN A. C. GRAY.

To charge a man with *publishing* an obscene carricature, which was also a *libel* upon individuals, is to impute to him an *indictable offence,* and the charge is actionable *per se.* And to say of a man that he *published a libel,* is actionable *per se.*

And where a libel has been *published,* it is actionable to say that a man is the *author* of it.

Where the alleged slanderous statement is presumptively *privileged,* there must be a sufficient averment of *malice* to sustain the action. And a general averment in the complaint that the words were spoken *falsely and maliciously,* is sufficient.

Where, as in this case, the action, though in form for *slander,* is sufficiently analogous to demand the application of the rule that prevails in actions for malicious prosecution, requiring *proof of the want of probable cause* to sustain it, *held,* that

a statement or averment in the complaint, denying that the plaintiff had any knowledge or complicity in the matter charged, was sufficient, as it was all that he would be required to prove to make out, *prima facie*, the want of probable cause.

*New - York, Special Term, December,* 1859.

THE complaint avers:

1. That at the time of the alleged slander, the defendant was one of " the commissioners of the Central Park."

2. That before that time the plaintiff had been employed on the park as chief engineer.

3. That in April, 1858, on the invitation of the commissioners, plans for the improvement of the park were submitted to them, and that, among these plans, was one by Olmstead & Vaux, which they designated " Greensward."

4. That said plan was adopted by the commissioners, and Olmstead was appointed by them chief architect.

5. That shortly afterwards " a certain obscene, scandalous, and criminal libel was published of, and concerning Olmstead & Vaux, and the editor of the *Evening Post*, by some one unknown to the plaintiff; said libel being the carricature annexed, copies of which were, by some person unknown to the plaintiff, sent to the commissioners."

6. That on the 9th of September, 1858, Thomas C. Field, one of the commissioners, submitted to the board of commissioners, at a meeting held on that day, the following resolution :

" *Resolved*, That the architect-in-chief be requested to employ E. L. Viele (meaning thereby the plaintiff,) as engineer on the park, (meaning thereby the said Central Park), at a salary of not exceeding twenty-five hundred dollars per annum."

That thereupon the defendant, addressing Mr. Belmont, one of the commissioners, falsely and maliciously spoke, of and concerning the plaintiff, the false, slanderous and defamatory words following :

" Have you seen Mr. Viele's card ?" Whereupon said Belmont asked defendant, " What card ?" or words to that effect ; to which defendant replied : " The caricature with reference

to Greensward, which has been sent to the members of the commission," meaning thereby the obscene and libelous caricature aforesaid. That thereupon the said Field said he did not believe that said Viele was the author of said caricature, or words to that effect; to which the defendant replied : " He is the author of it ; I know it."

7. That the plaintiff is not the author or publisher of the caricature.

8. That the plaintiff has been damaged by the conversation, in his reputation, to the amount of $10,000.

9. That, by means thereof, the resolution was lost, to the damage of the plaintiff of $10,000.

The defendant demurs to the complaint, upon the ground that it does not state facts sufficient to constitute a cause of action.

CLARENCE A. SEWARD, *for defendant, argued,*

The constitutions of the United States (*Adment* 1,) and of the state of New-York (*Article* 1, § 8,) prohibit the passage of any law restraining or abridging the liberty of speech. The bill of rights, (1 *R. S.* 94, § 1), following out this provision, declares " that every citizen may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right."

Has the defendant abused that right ?

I. The complaint treats the alleged words—

1st. As being actionable *per se.*

2d. As having occasioned special damage.

*First.* What words are actionable *per se ?*

The rule seems to be, that where the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment, then the words are in themselves actionable. (*Brooker* agt. *Coffin*, 5 *Johns.* 188 ; 1 *Am. Lead. Cas.* 98, and cases there cited. *Crawford* agt. *Wilson*, 4 *Barb. S. C. R.* 504 ; *Young* agt. *Miller*, 3 *Hill*, 21.)

But it is not enough to show that, if the words are true, the

plaintiff could be subjected to a criminal prosecution; it must also be shown that the offence charged imputes moral turpitude, or something infamous and disgraceful in a general sense. (*Per* DALY, *J.*, in *Quinn* agt. *O'Gara*, 2 *E. D. Smith*, 388.) It is not sufficient that the alleged words impute the violation of a penal or a criminal law; they must go further, and charge the plaintiff with an offence which involves moral turpitude, or would subject him to an infamous punishment. (*Hoag* agt. *Hatch*, 23 *Conn.* 585; *S. C.*, 18 *Monthly Law Rep.* 680; *Martin* agt. *Stillwell*, 13 *Johns.* 275.)

There is no criminal statute in this state punishing libels, and, therefore, if they are punishable at all, they are punishable only as misdemeanors at the common law. There is but one statute in relation to indictments for libel, and that is to be found in the Laws of 1852, chapter 165, and prescribes where an indictment therefor is to be tried. The punishment prescribed by statute for misdemeanors (2 *R. S.* 697, § 40,) is imprisonment in the county jail not exceeding one year, or a fine of $250, or both such fine and imprisonment. Such punishment is not *infamous*. The same punishment is prescribed for keeping a bawdy-house, and that has been decided not to be infamous. (*Martin* agt. *Stillwell*, 13 *Johns.* 275.) Besides, the legislature have defined the term "infamous crime" to include "every offence punishable with death, or by imprisonment in a state prison, and no other." (3 *R. S.* 702, § 31.) *Infamous* punishment can, therefore, be inflicted for *infamous* crimes only; and if the plaintiff had, therefore, been charged with the publication of the alleged libel, such charge would not have been actionable *per se.*

Again: The plaintiff was not charged with any crime, or with having been privy to any crime whatever, and, therefore, the alleged words are not actionable *per se.* The plaintiff is charged with having been "*the author*" of a caricature. The charge "hath this extent, no more;" and that "trespass is deemed worthy the shame which here it suffers." To constitute a slander, in alleging that the plaintiff has committed a crime, the crime must be fairly charged, or, in other words, the

charge must convey to the hearer an express imputation of some crime liable *to* punishment. (*Holt* agt. *Scholefield*, 6 *Term Rep.* 691.) No crime has been imputed to the plaintiff, for the reason that neither at the common law, nor by statute, is it a misdemeanor, felony or other crime, to design, or to be "the author" of a caricature. There is no inhibition in the law against the employment of one's pencil for his own gratification. The gist of the offence consists in the malicious *publication* of the caricature, and that publication must, in order to support an indictment, be averred. (*Barbour's Crim. Law*, 237; *Rex* agt. *Williams*, 2 *Camp.* 646; *Rex* agt. *Hunt*, *id.* 583.) And in an action on the case, it must also be averred. (1 *Saund.* 242, *n.*) The plaintiff, in his complaint, has *ex industria* denied that he published the libel. This denial was a work of supererogation, inasmuch as the defendant did not aver that the plaintiff had published the caricature, or had been privy to its publication. The charge did not, therefore, impute to the plaintiff any crime whatever, and hence the words are not actionable *per se.*

*Second.* The plaintiff seeks to recover $10,000 for alleged special damage sustained by him, and that special damage, in the words of the declaration, is: "Plaintiff further says, on information and belief, that by means of said slander, and the uttering thereof at said meeting, that the said resolution was lost, to the damage of plaintiff of ten thousand dollars."

The action on the case for slander, when special damage is averred, as a general rule, pre-supposes that the words are not actionable *per se,* but that, by reason of their uttering, third persons have been so influenced that the plaintiff has been subjected to some pecuniary loss. That pecuniary loss must be wholly and exclusively the consequence of the words spoken by the defendant, (*Halleck* agt. *Miller*, 2 *Barb. S. C. Rep.* 630; *Terwilliger* agt. *Wands*, 25 *id.* 313); and it must be the natural and immediate consequence of the speaking of the words. (*Beach* agt. *Ranney*, 2 *Hill*, 314.) No evidence can be received of any loss or injury which the plaintiff has sustained by the speaking of the words, unless it is specially stated in the com-

plaint. (*Herrick* agt. *Lapham*, 10 *Johns.* 281.) The object of this rule is to prevent the defendants being taken by surprise.

Under the present system of pleading, there is another rule, which requires the plaintiff to state all the facts which he expects to prove, tending to show that the special damage complained of, was the natural and necessary consequence of the alleged slander, and that is, that, if they are not so pleaded, they are not available to the plaintiff proving them. (*Kelley* agt. *Western*, 2 *Comst.* 506; *Field* agt. *The Mayor*, 2 *Seld.* 179.) The rule is well settled by Ch. J. JONES, in *Shipman* agt. *Burrows*, (1 *Hall Sup. Ct.* 414), in these words: "The particular persons by whom the plaintiff was injured in consequence of the defamatory words, must be within his own knowledge, and they must be so particularized in the declaration as that the defendant may have notice of the cause of complaint, and be enabled to meet it if the particular charge be false. The plaintiff has no right to conceal this knowledge and throw the burden upon the defendant of preparing his defence by making inquiries of every person, under the uncertainty as to what particular person the plaintiff might direct his proof."

The plaintiff states, in his complaint, that the defendant is one of the commissioners of the Central Park. That, at a meeting of those commissioners, another commissioner offered a resolution that the architect-in-chief be requested to employ the plaintiff as chief engineer, and that, in consequence of the alleged slander, such resolution was lost. These averments necessarily bring before the court the act of 1857, chapter 771, appointing these commissioners, and defining their duties. Section 2 of this act appoints eleven commissioners, who are designated in section 3, and requires a majority of the board to pass a final and binding vote. The plaintiff, therefore, requires the court to assume that there were six commissioners present at this meeting, and that the entire six were influenced by the alleged slander, and by that alone, to vote against the resolution. The complaint should have averred who were present at the · meeting, that they constituted a majority of the board, and that, but for the alleged slander, each one of the six

would have voted for the resolution. In other words, he should have " particularized, in his complaint, the particular persons by whom he was injured in consequence of the defamatory words," and should have alleged that " the special damage was *exclusively* the consequence of the words spoken." (*Terwilliger agt. Wands,* 25 *Barb. S. C. R.* 313.) Undoubtedly the plaintiff must allege all that he must prove at the trial. He must prove—

1. That there were six commissioners at the meeting
2. Who they were.
3. That they were in favor of the resolution, and would have voted for it, but for the alleged slander.
4. That the architect-in-chief, if the resolution had been passed, would have employed the plaintiff.
5. The complaint contains no averments as to any of these facts, and, therefore, does not present a case of special damage. The plaintiff must know what commissioners were influenced by the alleged slander, and " he has no right to conceal that knowledge, and to throw the burden upon the defendant of preparing his defence by making inquiries, of " the ten other commissioners, as to the effect of his statements upon their votes.

II. It affirmatively appears, from the averments in the declaration, that the alleged words were privileged.

(*a*) The defendant is a public officer, appointed by the legislature of the state, and is required to take the usual oath of office, and is vested, as one of the commissioners of the Central Park, with authority to appoint engineers, surveyors, clerks and other officers.

(*b*) The plaintiff was an applicant for office under the commissioners. A resolution was offered, at a meeting of the commissioners, to the effect that the architect-in-chief be requested to employ the plaintiff as chief engineer. While this resolution was pending, the defendant made to the commissioners, and to no other person, the alleged slanderous statement. Such statement, as interpreted by the other averments in the complaint, was manifestly privileged.

(c) The constitution of New-York (*Article* 3, § 12,) provides that, " for any speech or debate in either house of the legislature, the members shall not be questioned in any other place." Such speeches and debates are, therefore, absolutely privileged.

(d) The law extends a similar privilege to others. For example :

1. To counsel—against whom no action can be maintained for pertinent words spoken without malice in a judicial proceeding. (*Hodgson* agt. *Scarlet, Holt,* 620.) And within these limits the protection is complete, and no private action or public prosecution can be maintained therefor, however false the charge may be. (*Gilbert* agt. *The People,* 1 *Denio,* 41 ; *Hastings* agt. *Lusk,* 22 *Wend.* 410.)

2. There are many other cases of the same character. They may be summed up as follows :

1st. Whenever the author and publisher of the alleged slan der acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interest.

2d. When the words are used by a master, in giving the character of a servant who has been in his employment.

3d. When the words are used in the course of a legal or judicial proceeding.

4th. When the words are used in the ordinary mode of parliamentary proceedings—as in a petition. (*White* agt. *Nicholls,* 3 *How. U. S.* 266 ; *Cook* agt. *Hill,* 2 *Sandf.* 341.)

(e) The present case falls within the first of these subdivisions. The words were uttered by a public officer, with reference to a person soliciting office from the board of which such public officer was a member, and which was competent to decide upon the petition of the applicant. (*Hosmer* agt. *Loveland,* 19 *Barb.* 111.) They were pertinent, because they related to the applicant, and charged him with having designed a caricature of a peculiar character, and one referring to former action by the board ; and the charge, if true, was proper to be taken into consideration by the board, in deciding upon the plaintiff's application. It is upon this principle, that a statement made by

a bank director, at a meeting of the board, in relation to the solvency or circumstances of the customers of the bank, or of any other person, are held privileged. Such statement, when made with reference to a person asking for the discounting of his note, or to be employed by the bank, are pertinent, and the legal presumption is, that the motive of the director making them was to guard the interests of the institution; and the time and place when and where they were made, show that they were intended as a confidential communication. (*Sewall* agt. *Catlin*, 3 *Wend.* 291. See, also, the analogous cases of *Bradley* agt. *Heath*, 12 *Pick.* 163; *Jarvis* agt. *Hathaway*, 3 *Johns.* 180, and cases cited in 1 *Am. Lead. Cases*, 183, 184.)

(*f*) The question whether a communication is, or is not privileged, is a question of law, and may be raised by demurrer, (*Hosmer* agt. *Loveland*, 19 *Barb. S. C. R.* 115; *Fry* agt. *Bennett*, 5 *Sandf. S. C. R.* 54, 72;) and it is, therefore, a question for the court, and not for the jury, to decide.

The defendant made, to his co-commissioners, a statement with regard to the plaintiff. The defendant is a public officer, charged in common with the public duty of superintending the laying out and adornment of the Central Park, so that it may become a retreat for our citizens, affording them opportunities for amusement, socal intercourse, and the acquisition of health. To accomplish this, and to produce from an uncultivated waste an ornamental park, with its hills and valleys, walks and lawns, trees and fountains, is a work of labor, requiring laborers by the hundred. They are of every grade, from an architect-in-chief to a man with a pick-axe, and the selection of all these laborers is confided, by law, to the defendant and his coadjutors. Are they not protected in stating at their meetings what they know, or think they know, in regard to those who ask them for employment? Can it be that no public officer can state, to those in like authority and position with himself, that he knows or thinks an applicant for office to be unfit, for this or that given reason, for the appointment? If he cannot, then, in the language of L'Hommedieu, senator, in *Thorn* agt. *Blanchard*, (5 *Johns.* 520): "No person can complain or tell

his opinion respecting officers, or those wishing to become such, without being liable to be harrassed in a court of law, and be put to great expense, even if he can prove his opinion correct."

(g) If the communication is privileged, it follows that the occasion of making it rebuts the *prima facie* inference of malice arising from the publication, and throws upon the plaintiff the *onus* of proving *malice in fact.* ( *White* agt. *Nicholls,* 3 *How. U. S.* 266, 287; *Van Wyck* agt. *Guthrie,* 4 *Duer,* 268; *Thorn* agt. *Moser,* 1 *Denio,* 488; *Thorn* agt. *Blanchard,* 5 *Johns.* 509; *Sikes* agt. *Dunbar,* 1 *Camp.* 202, *n.; Vanderzee* agt. *McGregor,* 12 *Wend.* 545.)

But the plaintiff must go further, and prove *want of probable cause.* The action of slander upon a privileged communication is assimilated to an action for malicious prosecution, where the want of probable cause must be proved by the plaintiff. ( *Cook* agt. *Hill,* 3 *Sandf. S. C. R.* 341, 349; *Howard* agt. *Thompson,* 21 *Wend.* 320, 330.) Proof of malice alone will not sustain the action. From the want of probable cause, malice may be implied; but the want of probable cause cannot be implied from the most express malice. The want of proaable cause must, therefore, be substantially proved, ( *Murray* agt. *Long,* 1 *Wend.* 140), and cannot be implied. ( *Johnstone* agt. *Sutton,* 1 *Term Rep.* 544.) The proof of express malice appears to consist, in all cases, in showing *mala fides* in the defendant—that is, that the occasion was made use of colorably as a pretext for wantonly injuring the plaintiff. (1 *Am. Lead. Cas.* 181.)

(h) It has already been stated that facts proved, but not alleged, are not available to the party proving them. Has the plaintiff in his complaint alleged either the express malice or the want of probable cause, so as to permit their being proved at the trial? The allegation is "did falsely and maliciously speak." It is not enough to allege that the defendant "*ex malitia et sine causa per quod, &c.*" The express malice and the want of probable cause must be alleged "*in totidem verbis,*" with a statement of the facts which it is claimed will prove the

allegation. (*Reynolds* agt. *Kennedy*, 1 *Wils.* 232.) The question of express malice is a question of fact for the consideration of the jury, (2 *Saund. Pl.* 195), and the question of probable cause, involving the sincerity of the defendant, is also a question of fact. (*Id.*)

(*i*) If the communication is privileged, the defendant has a right to require the plaintiff to specify, in his complaint, the particular facts upon which he intends to rely, to disprove the legal presumption of want of malice. Those facts constitute the very gist and essence of his action, and, under the present rules of pleading, he cannot be allowed, under the general charge contained in an adverb, to surprise the defendant by proof of facts which are not stated in the complaint. This rule under the later decisions is inflexible, and imperatively requires a party, seeking to recover damages for an alleged injury to himself, to specify in his pleading the facts which occasion the injury. The words "maliciously" and "falsely" are not allegations of a fact. They can be used to qualify or to affix an intent to conceded facts; but they cannot fill the place of the facts themselves. Every fact which the plaintiff must prove to enable him to maintain his suit, and which the defendant has a right to controvert in his answer, must be distinctly averred. (*Garvey* agt. *Fowler*, 4 *Sandf. S. C. R.* 665.) And these facts must be *physical* facts—that is, something done, said, or written, which can be proved by witnesses, and which must exist prior to an adverbial qualification thereof. No such facts are averred in the complaint, and it fails, therefore, to state a cause of action producing special damage.

R. O. GORMAN, *for plaintiff.*

DALY, F. J. The complaint avers that a scandalous, criminal and obscene libel was published, by some person unknown to the plaintiff, of and concerning Messrs. Olmstead & Vaux, who had submitted a plan for the improvement of the Central Park, and the editor of the Evening Post, being an obscene caricature, a copy of which is annexed to the complaint; and

that the defendant, at a meeting of, and in the hearing of, the commissioners of the Central Park, referring to this caricature, said, of the plaintiff, " He is the author of it ; I know it."

The first objection raised by the demurrer is, that this was not imputing to the plaintiff any offence involving moral turpitude, or which would subject him to an infamous punishment. That an indictment would lie for publishing this caricature, does not admit of a doubt. (*Austin* agt. *Culpepper*, *Skinner's R.* 123 ; 2 *Holt*, 313 ; *Anon.*, 11 *Mod.* 99 ; *Du Bort* agt. *Beresford*, 2 *Camp.* 511.) It was not only a libel upon the persons designed to be affected by it, but, as an obscene caricature, it was an offence against public morality. (*The King* agt. *Carl*, 2 *Strange*, 788 ; 1 *Russell on Crimes*, 233.) The defendant insists, however, that to say of a man that he published a libel, is not actionable *per se*. In *Young* agt. *Miller* (3 *Hill*, 21,) it was held, that to charge a man with a crime for which he might be indicted, and which would be disgraceful to him in a general sense—that is, which would detract from his character as a man of good morals—was actionable ; and, certainly, to charge a man with publishing an obscene caricature, which was also a libel upon individuals, is to impute to him an offence which would have that effect. But the point has been expressly passed upon. It was held, in *Sir William Russell* agt. *Lignor*, (1 *Roll. Abr.* 46 ; 1 *D'Au. Abr.* 98 ; 1 *Vin. Abr.* 423, *Pl.* 27,) that to say of A. "that he made a libel on B.," A. being a justice of the peace, was actionable. It was objected, in that case, that it did not appear what the effect of the libel was ; but the court were of opinion ·that it was enough to say, of a justice of the peace, that he had made a libel, as it was imputing to him an offence for which he could be indicted at common law, and subjected to fine and imprisonment ; and, in *Andrews* agt. *Koppenheafer*, (3 *Serg. & Rawle*, 258), it was held, that words charging another with making a libel were actionable.

It is further insisted that the offence did not consist in designing and drawing the caricature, but in publishing it ; and

that saying that the plaintiff was the author of it, was not charging him with having published it.

It is averred, however, in the complaint, that the caricature had been published before the speaking of the words, by the sending of copies of it to all the commissioners; and to say of a man, after a libel has been published, that he is the author of it, is to convey the imputation that he is connected with the publication, or at least that he was an actor or principal in the criminal act. In the *Queen* agt. *Lovett*, (9 *C. & P.* 462), all that was proved against the defendant was, that the manuscript from which the libel was printed was in his handwriting. There was no other evidence to connect him with the printing or the posting of it, yet this was deemed sufficient to sustain the indictment, and upon this evidence alone he was convicted. And Lord TENTERDEN, in *Sir Francis Burdett's case*, (4 *B. & Ald.* 95), went even further: "I have heard nothing," he said, " on the present occasion, to convince my mind that one who composes or writes a libel, with intent to defame, may not, under any circumstances, be punished if the libel is not published." In the *King* agt. *Paine* (5 *Mod.* 163,) the court said, that the making of a libel was an offence, though it were never published; and similar views have been expressed in several cases. (*The King* agt. *Beare*, 1 *Ld. Ray.* 414; *S. C.*, 2 *Salk.* 417; *S. C.*, *Carthew*, 407; *S. C.*, *Cases Temp. Holt*, 422; *S. C.*, 12 *Mod.* 218; *Lamb's case*, 9 *Coke*, 59; *The King* agt. *Kissell*, 1 *Barnds.* 305; *The King* agt. *Williams*, 2 *Camp.* 646.)

Where, then, a libel has been published, it is very clear, from these authorities, that it is actionable to say that a man is the author of it.

The next question is, whether the statement made by the defendant was a privileged communication? It was made at a meeting of the board of commissioners, of which the defendant was a member—after a resolution had been offered by one of the commissioners, that the architect-in-chief should be requested to employ the plaintiff as engineer of the Central Park. Any communication or statement made in the discharge of a

legal or moral duty, which may be considered applicable or pertinent to the duty which .the party is engaged in discharging, is privileged, however injurious it may be to individuals, unless it appears to have been done from a malicious and mischievous design to injure the character of the person to whom it refers. The commissioners of the Central Park were a public body, discharging, to the extent of the power conferred upon them, the functions of government; and the defendant, as a member of the body, was a public officer. Whatever, therefore, he might say, at the deliberations of the board of commissioners, bearing upon, or having relation to, any matter within their cognizance, would be presumptively privileged. The matter before them, was the propriety of adopting the resolution requesting the architect-in-chief to employ the plaintiff as engineer, and a statement that the plaintiff was the author of ·a production designed to caricature and hold up to ridicule the plan which the commissioners had adopted for the improvement of the Central Park, whether it were true or not, must be regarded as relevant and pertinent to the subject before them. It is not for a court of law to say that it was a matter which they ought not, or could not, take into consideration. The commissioners alone were to judge of the reasons which should influence them to vote for or against the resolution, and that they considered· it material, appears from the averment in the complaint, that in consequence of the statement the resolution was lost. Concluding, then, from the occasion upon which the charge was made, and the relevancy of the subject matter of it, that it was presumptively privileged, the next question raised by the demurrer is, whether there is a·sufficient averment of malice? It is insisted that the general averment in the complaint, that the words were spoken maliciously, is not enough. That it is nothing more than an averment of that malice in law, which exists whenever the words are actionable, but that, in a case like this, when it appears upon the face of the complaint that the occasion was a priviledged one, the complaint must contain a specific averment of the facts and circumstances which show conclusively that the words were

spoken from actual malice, or that a good cause of action is not made out.

In passing upon the question of the sufficiency of the complaint in this particular, it will be necessary, first, to have a clear understanding of what is meant in actions of defamation by the term malice, for it must be confessed that there is at present considerable obscurity as to the meaning of this word, or rather as to the sense in which it is to be understood in actions of this nature, growing out of a distinction taken by BAILEY, J., in *Brommage* agt. *Prosser*, (4 *B. & C.* 247,) between what he calls malice in law, and malice in fact. He says that the law recognizes two descriptions of malice, in actions of slander. That malice, in its common acceptation or popular sense, means ill-will to a person; but in its legal sense, it means a wrongful act done intentionally, without just cause or excuse. I apprehend that there is no ground for distinguishing between the legal and the popular sense of the word, and that it means, in its legal sense, exactly what it means in its popular sense, namely, a mischievous design or intent to do an injury to an individual or to the public. *Crabbe*, in his work on *English Synonyms*, after tracing the word to its Latin root *malus*, bad, defines it to be the very essence of badness lying in the heart—the love of evil for evil's sake—as where a man is impelled to do mischief to those who never injured him; and it is in this disposition to injure, from what he calls an abandoned heart, that *Blackstone* understood it in its legal sense. (4 *Com.* 200.) Lord HOLT distinguishes it from *hatred* or *rancor*, which may exist simply as a feeling; but the intention to injure being an ingredient in malice, he defines it to be "a design formed of doing mischief to another." *The Queen* agt. *Mawgridge*, (*Kelynge's R.* 127.) Chief Justice RUSSELL, in his work on crimes, refers to it "as a term of law denoting, directly, wickedness, and excluding just cause or excuse," (1 *Russell on Crimes*, 483); and BEST, J., in *The King* agt. *Harvey*, (2 *B & C.* 257), which was an indietment for libel, defines it to be "any wicked or mischievous intention of the mind." In criminal prosecutions for libel, this malice, or wicked and mischievous.

intention of the mind, is of the very essence of the offence. (*Commonwealth* agt. *Clapp*, 4 *Mass. R.* 163.) It is called malice in law, because it is an inference which the law draws from the criminal nature of the act, but which may be rebutted by showing that there was no malicious intent to do an injury either to the individual or to the public. (*The King* agt. *Lord Abingdon*, 1 *Esp.* 228; 1 *Russ. on Crimes*, 250; *Want's Case*, *Sir Fr. Moore*, 627.) In the criminal prosecution it is necessary, therefore, to aver, in the indictment, that the words were published maliciously, (*Anon.*, *Styles R.* 392), but in the civil action for damages, this averment is not necessary. This was expressly adjudged upon error in *Mercer* agt. *Sparks*, (*Owen*, 51, *and see Sir Fr. Moore*, 459; *Noy*, 35), and though it is said, in the report of that case, that the averment was unnecessary, as the words were in themselves malicious, the reason given by the reporter is not the correct one, as it would apply equally to an indictment for libel, where such an averment is necessary.

In the anonymous case cited from *Styles*, ROLLE, Ch. J., pointed out the distinction between the civil action and the criminal prosecution, declaring that it was not necessary to aver, in a declaration, that the words were published maliciously, though it was in an indictment, or upon filing a criminal information. But, although this has been settled to be the law for more than two hundred years, it has been the fashion with pleaders, both ancient and modern, as *Starkie* remarks, to deal so profusely with the evil motives of the defendant, that such an averment is rarely found wanting; and it is to this persistant and constant use of it that we owe the erroneous impression that, in all cases, malice is, in some sense, the gist of the action. Thus, in *Smith* agt. *Richardson*, (*Willis*, 24), four of the twelve judges were of opinion that malice was the gist of the action, because, as they expressed it, the words are always laid in the declaration to have been spoken falsely and maliciously; and Justice BAYLEY cites this opinion without perceiving, or at least without noticing, that the conclusion arrived at by the four judges was founded upon the mistaken impression that this averment in the declaration was a material

one.. In the adjustment of damages, malice may become an element, and its existence presumed; for, if nothing is shown in mitigation, the jury would be warranted in assuming that the publication was made with a malicious intent to injure, and evidence, tending to show either the absence or the existence of malice, is always received to diminish or to enhance the damages. (*Gilman* agt. *Lowell*, 8 *Wend.* 573; *Root* agt. *King*, *ibid*, 139.) But it is an error to suppose that malice, except when the words are privileged, is in any way essential to a cause of action. If the words are averred in the complaint to have been published maliciously, the defendant cannot take issue upon that averment, (*Fry* agt. *Bennett*, 5 *Sandf.* 62; *Howard* agt. *Sexton*, 4 *Comst.* 160), nor, except where the communication is privileged, will the most conclusive evidence of the absence of a malicious intent furnish any answer to the action, as it goes only to the question of damages. The motive of the defendant is wholly immaterial, so far as it respects the right of action. It may be a good or a bad one. The defendant may have heard the slander from another, believed it to be true, have had very satisfactory reasons for so believing, and felt that it was his right, as well as his duty, to represent what he honestly supposed to be the plaintiff's true character; but all this goes only in mitigation of damages. *Gilman* agt. *Lowell* (*supra*,) affords a good illustration:—the plaintiff had sworn, in a cause, that he was the owner of land, the deed of which was recorded in the clerk's office of a certain county; the defendant caused an official search to be made in the clerk's office, and, the deed not being found in consequence of a mistake in the indexing of the records, the clerk informed him that there was no such deed upon record, and the defendant, upon receiving this intelligence, accused the plaintiff of having sworn falsely. The plaintiff brought his action, and all this went only in mitigation of damages. The real foundation of the action is, the right of the plaintiff to recover a pecuniary satisfaction for an injury sustained, and it is wholly immaterial what may have been the motive of the person who caused the injury. The act must have been intentionally

done—the meaning of which is, that the defendant should know what he publishes; for, as in the case put by *Starkie*, if a servant deliver a sealed letter containing the defamatory matter, without knowing its contents, he would not, though the actual instrument of publication, be liable to an action. (*Lamb's case*, 9 *Coke*, 59.) If the defendant knows what he publishes, the inference is, that he meant it should have the effect of lessening the character of the plaintiff in the estimation of the community; for, in the language of Lord TENTERDEN, in *The King* agt. *Harvey*, (2 *B. & Cres.* 257), "he must be presumed to have intended to do that which the publication is calculated to bring about." This is a presumption of law from the act of publication. It is the only presumption which it is necessary to draw; and to denominate this intent malice, or malice in law, when it may have arisen from a good motive, the defendant believing what he alleges to be true, is to employ the word *malice* in a sense neither justified by its etymology, its ordinary meaning, nor its previous legal signification. To do so gives rise to confusion in respect to the meaning of the word, and involves the necessity of distinguishing two kinds of malice, whereas there is, and can be, in such an action, but one kind; for, whether the existence of malice is presumed, in the adjustment of damages, from the absence of anything in the mitigation, or it is proved as a fact to enhance damages, or to maintain the action where the communication is priviledged, it is generically the same thing in either case.

Where the occasion upon which the words were published was a priviledged one, the existence of malice shows that the party was not acting in the discharge of a duty, or in the exercise of a right which the law, upon grounds of public policy, would otherwise presume to have been the fact. The protection which the occasion affords is founded upon the just and rational principle, that one who is not a volunteer, but whose duty or right it becomes to discuss or speak of the character of another, is not to be restrained by the fear of an action for defamation, but may freely declare what he honestly and truly believes. The law presumes that he did so, and upon

that presumption exempts him from all liability, though what he said was unfounded in fact, and though its effect may have been highly detrimental; but the existence of malice removes this presumption, and places him upon the footing of a mischievous and malicious defamer.

Malice may be shown by the proof of an extrinsic fact, or it may be inferrable from the manner in which the publication was made, even though the subject matter of the communication was relevant, and the occasion a privileged one. In *Wright* agt. *Woodgate*, (1 *Tyr. & Gr.* 12), the letter written by the defendant was privileged, and all that was stated was pertinent to the subject matter of the communication, which was to dissuade the person to whom it was written, from giving his consent that another solicitor might be appointed for the plaintiff, in place of the defendant. PARKE, B., said that the whole of the letter was a privileged communication; that the occasion of writing it rebutted the presumption of malice, and threw upon the plaintiff to show that there was malice, and that that might be made out by directing the attention of the jury *to the language of the letter itself*, or by proving, by extrinsic evidence, that the defendant entertained malicious feelings. So in the present case, though the occasion was one in which the defendant had a right fully to discuss the character of the plaintiff, and the fitness of requesting the architect to appoint him engineer, and though the charge made was relevant to the matter under discussion, still, the way in which it was made, the broad statement by the defendant that he knew that the plaintiff was the author of the caricature, was going very far. It was an assumption of knowledge of the existence of what was asserted, precluding all doubt and forestalling all inquiry ; and, when it is taken into connection with what is averred in the complaint, that the plaintiff was not the author of the caricature, and was wholly guiltless of any complicity therein, I think it would be presumptively sufficient to entitle the jury to pass upon the question of malice.

In *Roger* agt. *Clifton*, (3 *B. & P.* 587), and in *Child* agt. *Afflert*, (9 *B. & C.* 403), which were cases of privileged communication,

positive proof by the plaintiff, that what was stated in the communication was false, would seem to have been regarded by the court as sufficient to raise the question whether the communication was made *bona fide* or not.

But, independent of this, I am not aware that anything more has ever been required in such cases, than to aver generally, as has been done in this complaint, that the defamatory matter was published *ex malitia*—that is, averring the fact substantively ; and it cannot be necessary to set forth all the circumstances upon which the plaintiff means to rely to prove it. The usual mode of averring it is, that, " contriving and *maliciously* intending to injure the character of the plaintiff, and to bring him into public scandal and disgrace, the defendant published, &c., of and concerning the plaintiff, &c." This is the form given by the elementary writers, where the communication is privileged. (2 *Starkie on Slander*, 385 ; *Cooke on Defamation*, 311 ; *Chitty on Pleading*, 630, 6*th Am. ed.*) This was the averment used in *Rogers* agt. *Clifton*, (3 *Bos. & Pul.* 587), and in *Pattison* agt. *Jones*, (8 *B. & C.* 578.) In analogous actions, where the proof of malice is essential to maintain the action, this general form of averring it has been considered sufficient. (*Barnadistone* agt. *Some*, 2 *Lev.* 114 ; *Mileward* agt. *Sergeant*, referred to in note B. to *Hermans* agt. *Tappenden*, 1 *East.* 555.) And in my own experience, (a somewhat extensive one, for I have tried a great number of actions of this description, many of them contested by very able and experienced counsel), I do not remember a case where the pleader thought it necessary to set forth the facts and circumstances upon which he meant to rely to establish malice, or where anything more was contained in the declaration than a general averment that the act was done maliciously.

The remaining point raised by the demurrer is, that the complaint should show, in respect to the publication, that there was a want of probable cause for making it. The want of probable cause, as essential to a right of action, arises only in cases of malicious prosecution, or those actions for defamation which are analagous to them—a class of actions generally dis-

couraged, (*Saville* agt. *Roberts*, 1 *Ld. Ray.* 374; 12 *Mod.* 208;
1 *Salk.* 13); as it is to the public interest that all persons should
be free to make complaints, before the proper tribunals, of all
matters affecting their own or the public interest, without be-
ing liable in damages if the charges made by them should turn
out to be unfounded, this exemption extends to the complain-
ants and to all persons, judges, jurors, witnesses, attorneys or
public officers, who take part in the proceeding; and no action
will lie for any injury to person, reputation, or property, grow-
ing out of it, unless it is shown that the party who originated
and set it on foot, had no reasonable or probable cause for so
doing. Probable cause, in such a case, is a belief founded upon
a reasonable ground of suspicion of the truth of the charge
made, and it is incumbent upon the party who brings such an
action, to aver and prove that there was a want of probable
cause. It is generally a legitimate inference, from the want of
it, that the party prosecuting was influenced by malice; but
not absolutely so in all cases, as he may honestly believe in the
truth of the charge he makes, but act upon insufficient grounds
of suspicion—as in *Merman* agt. *Mitchell*, (13 *Maine*, 439),—the
rule being, that the circumstances which warrant a reasonable
ground of suspicion, must be such as would induce a cautious
man to believe in the truth of the charge. (*Munns* agt. *Ne-
mours*, 3 *Wash. C. C.* 37.). Whilst, again, proof of the most ex-
press malice will not support such an action, if there were
probable cause, of which *Foshay* agt. *Ferguson* (2 *Denio*, 617,)
is a striking example. The want of probable cause, therefore,
may exist with or without malice; and, as it is the foundation
of the action, this ingredient essentially distinguishes the action
from one brought for defamatory matter maliciously published
upon a privileged occasion.

I am disposed to think that the present action, though in
form an action for slander, is sufficiently analogous to demand
the application of the rule that prevails in actions for malicious
prosecution, and that proof of the want of probable cause is
essential to sustain it. *Howard* agt. *Thompson* (21 *Wend.* 319,)
was an action for libel, in sending a written communication to

the secretary of the treasury, accusing the plaintiff, who was a subordinate officer of the secretary's department, of various acts of peculation and fraud upon the government, and requesting his removal ; and, after mature consideration, it was held that, though in form an action for libel, it was essentially, in principle, like an action for a malicious prosecution—that proof of the want of probable cause was necessary. If a person had sent a remonstrance to the board of commissioners, against the employment of the plaintiff, containing the same charge which the defendant made before the board, the remonstrant would have occupied a position similar to that of the defendant in *Howard* agt. *Thompson ;* and certainly the defendant in this case, for what was said by him at the deliberations of the board, where he was acting in the capacity of a public officer, comes as fully within the reason of the rule.

The complaint here does not aver, in so many words, that there was a want of probable cause, but I think it sufficiently shows it. As before stated, it alleges that the plaintiff was not the author of the caricature, and had no complicity therein. This, I think, is all that the plaintiff should be required to prove, in such a case, to make out *prima facie* the want of probable cause. In ordinary cases of prosecution, complaints, or petitions, whether made to judicial tribunals or to public officers, the party who institutes the proceeding, necessarily lays before the body or officer the facts or circumstances upon which he rests his charge, to satisfy or convince the authority he addresses that a case exists demanding its interference or action. The accused is thus advised of what is relied upon to maintain the accusation against him, and may give such explanation of the circumstances, or submit such proof in connection with them, as will show that the defendant acted without reasonable grounds of suspicion. But in this case, the defendant, before a public body of which he was a member, made a positive charge of a very grave nature against the plaintiff, without affording the slightest clue as to the facts and circumstances upon which he relied for the truth of his assertion. He stated that he knew that the plaintiff was the author of the caricature,

without stating how, or upon what, his knowledge was founded, and all, I apprehend, that the accused party can do in such a case, is to go upon the stand, and swear that he was not the author, and knew nothing about the making or publication of the caricature; and if, after such proof is submitted, the defendant can furnish no explanation of the grounds, facts, or reasons which induced him to make so positive a charge, the plain inference must be that he has none to offer, and that it was made without any cause whatever. Such a state of facts would, in my judgment, be ample evidence of want of probable cause.

Judgment must, therefore, be given for the plaintiff upon the demurrer.