By the Court.—Truax, J.
The words set out in the complaint imputed a lack of chastity in the plaintiff, and were libelous.
At the close of the plaintiff’s case, the defendant moved to dismiss the complaint, on the' ground that the plaintiff had failed to prove a publication ; the motion was denied, and the defendant excepted.
The plaintiff did not attempt to prove that the defendant had any part in printing the libel. She sought to hold the defendant for publishing the libel after it was printed, and for that purpose she offered evidence showing that one Reid (who was then employed in the office of the plaintiff’s attorney), purchased from- the defendant three copies of the paper containing the libel; that this purchase was made at the request of said attorney ; and that the papers so purchased were delivered to said attorney. The only other evidence of publication by the defendant was that of one Farrelly, the manager of the defendant, and that was to the effect that the defendant distributed and sold 240 copies of the paper, presumably to dealers. There is no evidence that any one ever read, or even saw this libel in any paper that the defendant distributed. The witness *14 Kilday read the libel, but it does not appear from whom he got the papers containing it. The presumption is, that not even the plaintiff’s agent Reid read the libel, for he says that he ‘ ‘ bought the papers and took them over and delivered them” to the plaintiff’s attorney.
^ A libel is published when it is communicated to some person, other than the plaintiff, who understands it, and not until then.
There is no presumption of law that every newspaper and every part thereof is read. The plaintiff must show, by evidence, that some one read the libel in some one of the papers that the defendant “published.”, In other words, before she can recover she must show that the defendant did in fact, publish the libel. This she failed to do. The complaint should have been dismissed on the ground that the plaintiff had failed to prove publication.
A number of exceptions were taken by the defendant to the admission of evidence tending to show that the plaintiff’s reputation for chastity was good. In an action of this kind the plaintiff cannot introduce such evidence for the purpose of rebutting evidence introduced by the defendant for the purpose of justifying the libel (Houghtaling v. Kelderhouse, 2 Barb. 149 ; aff’d 1 N. Y. 530). But this evidence was made relevant by the fact that the defendant offered evidence that tended to prove that the plaintiff’s reputation for chastity was bad (Pratt v. Andrews, 4 N. Y. 493; Inman v. Foster, 8 Wend. 602).
If requested the court would have charged the jury that this evidence did not tend to disprove the evidence of specific acts of lewdness. Some evidence of this nature was introduced by the plaintiff as a part of her case. The receipt of this evidence at that time was error, but this error was cured by the defendant’s attack upon the reputation of the plaintiff.
Whether the plaintiff’s social position or standing in society can be proved in an action of libel for the purpose of increasing damages, is a question not yet settled by the courts of this country. It has been held in some of the *15 states that evidence of the plaintiff’s position in life may be shown as evidence of the extent of the injury that he has sustained (Klumph v. Dunn, 66 Penn. St. 141; Clements v. Maloney, 55 Mo. 353 ; Fowler v. Chicester, 26 Ohio St. 9; Tolleson v. Posey, 32 Geo. 372; Humphries v. Parker, 52 Maine, 502; Karney v. Paisley, 13 Iowa, 89 ; Hosley v. Brooks, 20 Ill. 116). In the case of Palmer v. Haskins (28 Barb. 90), Judge Marvin said that he did not doubt that the general standing in society of either of the parties to the action might be proved, but this was obiter. He was also of the opinion, and this was the turning point of the case, that it was not proper to prove the wealth or poverty of either of the parties. The court of appeals, in Hatfield v. Lasher (81 N. Y. 246), held that evidence of the plaintiff’s bad reputation was admissible, not for the purpose of showing that his reputation was so bad that the defendant’s libel could not injure it, but for the purpose of showing absence of malice in the defendant, and to the same effect is Bush v. Prosser (11 N. Y. 347). The rule is stated by Stephens in his digest of the law of evidence, article 57, as follows : “In civil cases, the fact that the character of any party to the action is such as to affect the amount of damages which he ought to receive is generally deemed to be irrelevant ” (see 1 Ph. Ev. [5th ed.] 757). If the defendant cannot prove the plaintiff’s bad reputation for the purpose of decreasing damages, why should the plaintiff be allowed to show his good reputation for the purpose of increasing them % And if the plaintiff cannot show his good reputation, why should he be allowed to show his standing in society, especially since the laws of this State do not recognize different ranks in society % It must also be remembered that the action of libel is brought for the purpose of recovering compensation for the injury to the plaintiff himself and not for the injury to his reputation. It is absolutely necessary for the plaintiff to show a pecuniary injury in order to maintain this action (Wilson v. Goit, 17 N. Y. 442 ; Viele v. Gray, 10 Abb. Pr. 1). This is sometimes done, through the fiction of law that some words cannot be writ *16 ten of a man without inflicting injury; those words are called actionable per se. It was error to receive evidence of the plaintiff’s social position and standing in society.
Testimony of conversations that had taken place between the plaintiff and Harvier, was objected to by the defendant on the ground that they were immaterial, irrelevant and incompetent, and on the further ground that Harvier’s attention had not been called to them. This testimony was received and the defendant excepted. These questions were asked for the purpose of showing that Harvier was a man of bad habits and character. The testimony tended to disgrace Harvier. It related, however, entirely to matters irrelevant to tie issue. It is true that the state of a witness’s feelings towards a party are deemed to be relevant tó the issue; but that state of feelings cannot be shown by proving that the witness stole the party’s trunk or ulster, or that he did not pay his debts. This testimony did not impeach Harvier’s credit for veracity.. It is not improbable that Harvier might be all that the witness said he was, and yet he might be veracious. Nor did it affect his general reputation for truth and veracity. The evidence related to particular disgraceful acts (1 Green. 461). This evidence tended to mislead and divert the attention of the jury from the questions at issue. It tended to create in their mind a natural indignation against Harvier and against, the party who had called such a person as a witness.
Of course the cross-examination of witnesses on matters affecting their credit should be left mostly to the discretion of the trial court, whose decision is not the subject of review unless there has been an abuse of discretion (Gt. W. Turnpike v. Loomis, 32 N. Y. 127 ; King v. N. Y. C. & H. R. R. R. Co., 72 Id. 607).
The state of Harvier’s feelings towards the plaintiff is deemed to be relevant to the issue, and if he denied that he had expressed feelings of hostility towards the plaintiff it was not error to allow the introduction of evidence that contradicted him in this respect.
*17 He could also have been impeached by showing that he had made statements out of court which contradicted the statements that he had made on the trial, provided, these last statements were relevant to, or of facts that are deemed to be relevant to the issue, and provided his attention had been called to the particular circumstances and occasions of the making of such statements. Both of these well established rules were violated on the trial.
The plaintiff was allowed to testify that she had been told that Harvier was a scoundrel. This ruling was erroneous.
The court charged the jury that in arriving at the amount of damages to be awarded the plaintiff, a good way for them to do was to bring the question home to themselves and say for what sum would they, with their knowledge of the world, and of mankind, and of the result of a defamation, be willing to be libeled, as the plaintiff was libeled.
To this charge the defendant excepted. This'was error. It took from the jury the real question that they were to determine, viz., how much had the plaintiff been injured by the defendant’s acts, and put in its place the question, how much do you think you would have been injured if the act complained of had been done to you instead of to the plaintiff ? Such a rule would be a dangerous one to adopt in the administration of the law (Meyer v. Press Pub. Co., 46 Super. Ct. 127).
The judgment must be reversed.